## No. 11,651.

### E. E. METEYE vs. TIMES-DEMOCRAT PUBLISHING COMPANY.

Plaintiff claimed damages for a defamatory publication. The defendant pleaded that the publication was made without malice and privileged.

The committee of the Common Council, whose proceedings were accurately published, met at the instance of the Mayor to investigate charges of mismanagement of the Leper Hospital.

The report published was prepared by a writer regularly employed upon the paper. The report gave the contents of a letter read before the committee and an account of a personal statement of the author of the letter, supplementing the contents of the letter, and the publication also contained an account of the visit of the committee to the hospital. None of these reports were of matter treated at the time as of a private character.

The author of the letter was under contract with the city authorities and received from the city money for the maintenance and treatment of persons afflicted with leprosy.

During the investigation before the committee it happened, unfortunately, that the name of plaintiff was given as one afflicted who was roaming at large.

The newspaper was at least one remove from the utterer. Although the report involved matter defamatory of plaintiff, not a party to the proceedings, it is still privileged if accurate and impartial

Reports of proceedings and transactions of State Legislatures and their committees and of the town councils are privileged under certain conditions. The principle applies also to the committees of the council in proceedings in open meetings pertinent to any inquiry or investigation properly pending or proposed before them.

The heading given to the report in the newspaper was not, *per se*, of a libelous character; it was pertinent to the article and referred to the inquiry or investigation of the committee.

Such articles generally are published under headings. Leprosy was the subject of inquiry; the head-lines called attention to that subject.

The subject of inquiry was not given greater publicity than the occasion required

The second publication, about one month after the first, was not a repetition of the first, and contained no allusion that the public could reasonably construe as applying to plaintiff.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Harry L. Edwards* and *Henry J. Rhodes* for Plaintiff, Appellant:

The meeting of the committee on charities was called for the sole purpose of investigating charges of mismanagement of the Leper Hospital by Dr. Beard. It was not for the purpose of ascertaining whether there were lepers in the city of New Orleans other than those under the care of Dr. Beard. It was not for the purpose of inquiring into the health of the city or the prevalence of any diseases within its limits.

Therefore, the defamatory statement of Dr. Beard, with reference to Meteye, was irrelevant and not pertinent to the issue, formed no part of a legislative or councilmanic proceeding, and therefore its publication was not privileged. Cooley on Torts, 257; Merrill, 182, 183; Wait's Actions and Defences, 2d Ed., Vol. 4, p. 309; Cooley on Const. Lim. 448; Belo vs. Wren, 63 Texas, 686; Coffin vs. Coffin, 4 Mass. 1; Newell, etc., p. 421, Sec. 23; 3 How. (U. S.) 266, White vs. Nicholls.

Report of a proceeding before a town council not privileged, especially when published of some person not amenable to the council. Odgers on Libel, etc., 259 *et seq.*; Newell, etc., 559, Sec. 168; 10 An. 231, Miller vs. Roy; 34 An. 134, Wallis vs. Bazet.

The publication of the proceedings, to be privileged, must be confined to the persons interested, and given no greater publicity than the occasion requires. The greater importance of one matter over another can not affect this rule, which is unflinching and inexorable. Merrill, etc., 219, 220; 19 N. Y. 173; 39 Mich. 378, Poster vs. Scripps; Odgers on Libel and Slander, 287; Townsend, 2d Ed., 431; 36 An. 378, State vs. Bienvenue.

The evidence shows that the reporter of the defendant paper sought Dr. Beard privately, after adjournment of the committee, out of the presence of the committee, and got the correct name and spelling of Meteye.

"Thou shalt not bear false witness against thy neighbor."

In Louisiana there is no distinction between words actionable *per se* and words not actionable *per se*.

Neither a committee of a council nor the council itself has any jurisdiction to confine or isolate lepers. The mode is pointed out by Act No. 85 of 1892, p. 109, which provides that they must be proceeded against in the Civil District Court by petition and affidavit, in the manner provided for the interdiction of insane persons.

Publication of the proceedings of a court, or an assembly without jurisdiction, is not privileged. Merrill on Newspaper Libel, pp. 182 and 183; Wait's Actions and Defences, Vol. 4, p. 309.

"For the publication of proceedings of a *quasi*-judicial character (and hence *quasi*-legislative) to be privileged, they must have transpired before a body having the power to hear and de--

termine the matters submitted to its jurisdiction.  It must have authority not only to hear, but to decide matters coming before it, or redress grievances."  Cooley on Const. Lim., p. 448; 63 Texas, 686; Newell on Defamation, Slander and Libel, p. 420, Sec. 21.

"The public is not regarded as having such an interest in proceedings embodying defamatory matter as will outweigh the necessity of protecting the character of individuals, unless the proceedings are of a legislative and judicial character."  Cooley's Const. Law, p. 558; 63 Texas, p. 686.

For the publication of matter otherwise libelous to be protected as a privileged publication, on account of its being part of a legislative proceeding, the proceeding must not have been preliminary and *ex parte*.  A publication of a proceeding before a legislative committee appointed by a Legislature to investigate land frauds, they being *ex parte*, is not privileged.  Belo vs. Wren, 63 Texas, 686.

A report of any proceeding in the Legislature, Congress or Parliament is privileged.  ".No other reports are privileged.  If any one publishes an account of the proceedings of any meeting of a town council, board of guardians, or vestry, of the shareholders in any company, of the subscribers to any charity, or of any public meeting, political or otherwise, and such account contains expressions defamatory of the plaintiff, the fact that it is a fair and accurate report of what actually occurred will not avail as a defence."  Is not privileged.  Odgers on Libel and Slander, p. 259, "Other Reports;"  Miller vs. Roy, 10 An. 231: Newell on Defamation, etc., p. 82, par. 5, and p. 559, Sec. 169; Lewis vs. Fenn, Anth. (N. Y.) p. 75; Wait's Actions and Defences, Vol. 4, pp. 309 and 310.

A paper which publishes a false accusation, giving to it an air of authenticity, is liable for libel, even though it would not have been liable but for the air of authenticity given to it by the heading or caption to the article.  27 An. 219, Cass vs. New Orleans Times; 15 An. 492, Cade vs. Redditt.  "The manner of the publication may take it out of the privilege."  Newell on Defamation, etc., p. 477, Secs. 66 and 67.

Even where the publication is privileged, anything added to the report, either in the body of it or as a *heading*, infects and de-

stroys the privilege.   27 An. 219; Merrill on Newspaper Libel,
pp. 182, 183, and 265; Edsall vs. Brooks *et al.* (New York
Evening Express), 17 Abbott's (N. Y.) Practice Reports; 2
Robertson (N. Y.), 474; Merrill, etc., pp. 170 and 171; 30
Minn. 41, Dr. Pratt vs. St. Paul Pioneer Press Co.; 11 La. An.
206, Tresca vs. Maddox; Cooley on Torts, 2d Ed., 257 (219),
259 (220).

Even where the publication is privileged, the privilege becomes
lost, unless it is limited to the persons interested.   If it be pub-
lished, as in this case, to the *whole world*, instead of having
been confined to the city of New Orleans, the privilege is lost.
Townsend on Slander and Libel, 2d Ed., pp. 431 and 432; 36
An. 378–383, State vs. Bienvenu.

---

*Buck, Walsh & Buck* and *Lamar C. Quintero* Attorneys for Defend-
ant, Appellee.

The proceedings of legislative bodies and their committees are abso-
lutely " privileged."    White vs. Nicholls, 3 How. 287;   Cooley
on Torts, 210;   Terry vs. Fellows, 21 An. 375;   Wallis vs. Bazet,
34 An. 131;   Smith vs. Higgins, 11 Gray, 251.

" Privileged communications " are classed into " absolutely " and
" conditionally " privileged; in the former, no action can arise
under any circumstances; in the latter, an action may arise
if the publication or utterance be both false and expressly ma-
licious.     Am. and Eng. Ency. of Law, Vol. 13, p. 406;   Hage-
man on Privileged Communications, 191;   Cooley, 210 *et seq.*

This class of privilege (whether absolute or conditional) extends to
*   *   *     proceedings in legislative bodies and to all who in
the discharge of public duty or honest pursuit of private right
are compelled to take part in the administration of justice or in
legislation.

In this class of privileged communications the occasion is an abso-
lute privilege, and the only question is whether the occasion
existed and whether the matter complained of was pertinent to
the occasion.    Gardeman vs. McWilliams, 43 An. 456.

The publication of such proceedings (legislative, etc.) by a newspa-
per, in the due and regular course of its business, comes under
the protection of the " conditional " privilege; that is, " the

occasion rebuts the presumption of malice, essential to libel,"
but "leaves the party liable, if both malice and falsehood are
shown," or if "the occasion has been used to gratify malice or
ill will." Cooley, 210; Newell, Chap. 19, p. 384, etc.; Merrill
on Newspaper Libel, 22, 23, 191; Townshend, Secs. 209, 210, 217,
and authorities cited.

The "Common Council" of the city of New Orleans, as created by
Act No. 20 of Acts of the Legislature of this State of 1882, and
acts amendatory thereof, is a "legislative body" in the sense
of the law and definitions, defining and according "privilege"
to proceedings of legislative bodies and those of their regular
committees.

It being shown that the proceedings of all regular and special com-
mittees of the City Council take place in open session, at stated
times, in the presence of the reporters of the daily papers, the
publication of the proceedings, by fair and accurate account, of
such committees, is "conditionally privileged," and no liability
arises except on allegation and proof of express malice. Special
or express malice is neither alleged nor proved in this case.

The law imposes on a party injured by breach of contract or tort, the
active duty to render the loss as light as possible. Sutherland,
Vol. 1, p. 148.

Future gains or profits, in a business, can only be recovered when
their loss is the direct, natural proximate result of the injury;
and they must be distinctly proven, as due to such injury and
made certain as to amount. Sedgwick, Vol. 1, Sec. 176; Read-
ing vs. Peck, 6 An. 491; Harrison vs. R. R. Co., 30 An. 265;
Schlieder vs. Dielman et al., 44 An. 642.

----

Argued and submitted March 30, 1895.

Opinion handed down April 8, 1895.

Rehearing refused May 6, 1895.

----

The opinion of the court was delivered by

BREAUX, J. The plaintiff, the proprietor of a barber shop in this
city, claims of the defendants twenty-five thousand dollars for dam-
ages sustained by him in consequence of a libel published by the
defendants.

The defendants allege that the publications complained of by plaintiff were made in good faith, from proper motives, and that they were privileged publications.

The facts are that the Mayor deemed it proper to address a communication to the chairman of the committee on charitable institutions (a standing committee of the City Council), calling attention to the rumored mismanagement of the Leper Hospital, and suggesting that his committee, with the committee on public health, should investigate and find out if there was any truth in the rumors circulated and the newspaper articles published on the subject.

A meeting of the committee on charitable institutions was publicly held in compliance with the Mayor's suggestion.

. There was a reporter of the defendant present whose duty it was to attend the meetings of the council and of the committees, and report their proceedings for publication.

The physician with whom the city had contracted for the maintenance and treatment of persons afflicted with leprosy was also present; although not regularly summoned, he had been notified of the proposed investigation. A letter sent to the committee by this physician was read, in which he characterized as calumnious the reports circulated about the management of the hospital in his charge.

He supplemented the contents of his letter by verbal statements of difficulties surrounding him, because his contract with the city had expired; he said that persons afflicted with leprosy were roaming about the streets at will. He mentioned a barber who had been employed in a shop on Customhouse street between Bourbon and Royal streets, whose name was Meteye. There was another leper, he said, employed at a store, the name and locality of which was given; also two girls afflicted with the disease at a designated rice mill, and he had heard of another leper going into a saloon and taking his lunches with a number of other persons.

Although the physician was not under oath and examined as a witness, the names and the information were given by him in answer to questions propounded by the committee.

After adjournment the committee repaired to the Leper Hospital for the purpose of examining into its affairs and management.

The secretary kept a brief record of the proceedings, showing by what authority the committee was called together and in general terms the purpose for which it had convened.

His minutes of the proceedings further show that the committee adjourned to visit the hospital, and on the day following, to meet the committee on health to report the investigation.

The reporter made a complete and accurate statement, "a true report" of all the actual proceedings of the committee. It was published by the defendant company, with the heading "The Lepers" and head-lines:

"DR. BEARD TESTIFIES BEFORE A COUNCIL COMMITTEE."

"HE INVITES A FULL INVESTIGATION OF HIS HOSPITAL."

"HE SAYS HE HAS NO CONTRACT WITH THE CITY," ETC.

The plaintiff, Meteye, complained to the manager of the newspaper, who stated to him that the publication was privileged, but that an explanation would be published, as there was no intention to injure him.

The evidence discloses that instructions were given by the manager to publish a statement, and that by inadvertence it was not published.

About a month later the defendant published an editorial headed: "A National Leprosy Hospital," commenting upon the harmful effect of rumors of leprosy in Louisiana.

The writer of the editorial quoted freely from an article in the New York *Sun*. From that quotation we extract the following:

"A year ago the people of New Orleans indulged in a short scare over the information that quite a number of lepers were at large in the city and State, working at various trades, one even plying the vocation of barber."

Previous to the second publication a demand had been made of defendant, and had been referred to counsel for the defendant.

The judge of the District Court held that the publication was privileged, and rejected plaintiff's demands. From the judgment the plaintiff prosecutes this appeal.

IF NOT PRIVILEGED AN EXPLANATION WOULD ONLY HAVE MITIGATED
THE DAMAGES.

The testimony informs us that it was owing to the neglect or oversight of one of the employés that the correction promised was not published.

This would have been only an act of justice to the plaintiff; the fact, however, remains that if the first publication was not

"privileged," as is contended by the plaintiff, an attempted repara-
tion by the defendant would have offered no escape from liability;
it would only have, possibly, mitigated the damages.    Cass vs.
New Orleans *Times*, 27 An. 214, 219.

Plaintiff's complaint upon this point is somewhat, if not entirely,
neutralized by his counter contention that the publication was not
privileged.

In short, however unfortunate the failure to make the publication
of the promised correction, the injury would not have been con-
doned by an attempted reparation. With or without attempted cor-
rection, if not privileged, damages are due.

### CONDITIONALLY PRIVILEGED.

From the foregoing it follows that the only question for our deter-
mination is whether or not the publication was a privileged publica-
tion to the extent of precluding any presumption of malice.

Legislative proceedings are privileged.

"Every fair and accurate report of any proceeding in either
House of Parliament, or in any committee thereof, is privileged,
even though it contained matter defamatory of an individual."
Odgers on Libel and Slander, 257.

Mr. Cooley, in his valuable work on Torts, par. 214, says: "It is
customary in American institutions to declare this exemption from
responsibility in positive terms, but it exists independent of such a
declaration as a necessary principle in free government." It exists
without statute.   Under this principle the privilege would protect a
member of a Louisiana Legislature, even without the present con-
stitutional enactment upon the subject; as it protected as privi-
leged the proceedings of a congressional committee years ago.
Terry vs. Fellows, 21 An. 375.

Municipal corporations are endowed with subordinate legislative
functions, and it follows that under guarded limitations, "the mem-
bers of their council are sufficiently protected for whatever is said
by them which is pertinent to any inquiry, or investigation pending
or proposed before them."

They are, however, "accountable when they wander from the
subject in hand to assail others."   Cooley *ubi supra*.

From the text of Newell on Slander and Libel, p. 542, we extract:
Report of the proceedings and transactions of the State legisla-

tures and their committees; of town councils, etc., are privileged in the same manner as reports of judicial proceedings.''

By our own court it was decided that the proceeding of a town council may be reported under the protection of privileged publication.'' Wallis vs. Bazet, 34 An. 131.

The City Council has authority to appoint committees for the public advantage.

Proceedings looking to the preservation of public health are not foreign to the duties of the council or one of its committees, and the proceedings of the latter are as much entitled to protection as the council itself, particularly as the inquiry was regarding the mismanagement of the Leper Hospital, and into charges that persons afflicted with leprosy were roaming at will. The defendants are, at least, one remove from the utterer of the alleged slander, and published his statement as part of the proceedings of the committee.

The physician was under contract with and received pay for his services from the city; the investigation of his case was a proper subject of inquiry and gave to the proceedings a public character.

### THE HEADING OF THE REPORT DID NOT ENDORSE THE UTTERER'S STATEMENT.

The "heading" of the publication of which plaintiff complains, "Lepers," characterized the proceedings and directed attention to the subject matter of the investigation. It was not directed against the plaintiff, and added nothing to the proceedings; it did not, as it was used, give evidence or authenticity to the statement itself.

In distributing the meaning of the word at the head of the column it applies alike to all that was done, and can not be made to bear against the plaintiff as being, in the opinion of the publisher, afflicted with leprosy. It was a "heading" pertinent to the report.

### THE SECOND PUBLICATION.

We have no dissent to express from the principle announced by text writers, and sustained by authority, that the second publication of a libel, as evidence of malice, will enhance the damages. Merrill on Newspaper Libel, 257.

Here the publication was not of the same matter a second time. It was not a repetition of the libel. The last publication, about one month after the first, does not relate to the first. The word "bar-

ber," in the quotation from the New York *Sun*, is a generic word and does not refer to any one. There is no allusion whatever to the plaintiff in the second publication.

### PUBLICITY NOT GREATER THAN THE OCCASION REQUIRED.

The proceedings, as the evidence shows, were regarding a matter in which the whole public was interested, and conducted with open doors in accordance with usage; the report could not be limited to a locality nor to certain persons. As it was a matter relative to public health, and " privileged," it was not proof of malice to publish the proceedings. The limit upheld by Townshend in his work on slander as applying to a candidate for election to an office, and the case of State vs. Bienvenu, 36 An. 378, in which a church congregation was concerned, are without application in a large city when there are rumors of a dreaded disease.

It is clearly shown that no one in plaintiff's shop was afflicted with the dreaded disease.

The press is not without its shadows.

It is fortunate that its great force can have but temporary effect against conduct and services however humble; against the energy of good conscience and the just pride of having nothing to reproach oneself.

The authorities have classed publications of legislative bodies under a qualified privilege.

We deem it proper to adhere to the principle and to affirm the judgment.

Judgment affirmed.