JOHNSON *v.* MICHIGAN MUTUAL SAVINGS ASS'N.

APPEAL AND ERROR—TRIAL—ARGUMENT OF COUNSEL—PREJUDICIAL ERROR.

Improper argument by plaintiff's counsel persisted in after being repeatedly admonished by the trial court, resulting in prejudice to defendant, *held*, reversible error, POTTER, J., dissenting.

Error to Washtenaw; Sample (George W.), J. Submitted January 11, 1928. (Docket No. 139.) Resubmitted May 3, 1928. Decided June 4, 1928.

Case by Arda M. Johnson, individually, and as administratrix of the estate of William T. Johnson, deceased, against the Michigan Mutual Savings Association for fraud. Judgment for plaintiff. Defendant brings error. Reversed.

*Stivers & Laird* (*Austin & Newman,* of counsel), for appellant.

*L. L. Watkins* (*A. J. Waters,* of counsel), for appellee.

POTTER, J. (*dissenting*). Arda M. Johnson, individually, and as administratrix of the estate of William T. Johnson, deceased, sued defendant. There was verdict and judgment for plaintiff. A motion to set aside the verdict and enter judgment for defendant was denied. A motion for a new trial was denied. Defendant brings error, assigning 34 reasons for reversal, grouped under five heads as follows:

(1) The declaration is insufficient to sustain the verdict.

(2) There was no evidence of tender by plaintiff before suit of what was received under the contract.

Appeal and Error, 4 C. J. § 2939.

(3) There was no evidence that decedent relied on the alleged misrepresentations.

(4) Deceased relied upon and acquiesced in the transaction after knowledge of the claimed fraud.

(5) Prejudicial argument by counsel for plaintiff.

The declaration has three counts, the first two of which charge defendant with having procured, through its agents, the money of plaintiff's intestate and plaintiff's assignor by false and fraudulent representations and pretenses. It is charged that defendant's agents represented they were selling stock in defendant, whereas they delivered memberships therein. The third count is the common counts in assumpsit.

Defendant challenges the sufficiency of the declaration for the reasons,—that it does not allege facts sufficient to sustain a cause of action; it does not count upon the statute, 3 Comp. Laws 1915, § 12350; and the counts for tort are improperly joined with the count in assumpsit.

The first two counts in the declaration allege that defendant's agents made false representations and pretenses to plaintiff's intestate and plaintiff's assignor, which representations and pretenses are set forth in the declaration; that plaintiff's intestate and plaintiff's assignor relied upon such false representations and pretenses; that defendant thereby procured their money which it would not have procured had they not relied upon such false representations and pretenses; and that plaintiff's intestate and assignor were injured thereby. We think either of these two counts in the declaration sufficient to sustain the verdict, and it is self-evident that the common counts in assumpsit are sufficient.

The claim that the declaration does not count upon section 12350, 3 Comp. Laws 1915, which provides that in cases where an action on the case for fraud or deceit may by law be brought, and in cases of the conversion of personal property into money, the plaintiff may

bring and maintain either an action of assumpsit or an action of trespass on the case, is without merit.

Defendant contends that the two tort counts in the declaration cannot be joined with the count in assumpsit; that plaintiff's intestate and assignor and plaintiff, upon the discovery of defendant's alleged fraud, had the choice of two inconsistent remedies,—to retain what had been received, affirm the contract and seek to recover damages for the fraud; or to rescind the sale, tender back to defendant what had been received, and seek to recover what plaintiff's intestate and assignor had parted with. *Stowe* v. *Mather*, 234 Mich. 385.

It seems to be a well-settled rule in this State that counts based upon rescission of a contract and upon breach of contract may be joined. *Glover* v. *Radford*, 120 Mich. 542; *Goldman* v. *Great Lakes Foundry Co.*, 230 Mich. 524; *Stowe* v. *Mather*, *supra*. We think the declaration in this case is sufficient.

It is a general rule where plaintiff seeks to rescind a contract upon the ground that it was induced by fraud, and recover back the money paid thereon, he must, as a condition precedent, tender back whatever of value he has received, and thus place the defendant *in statu quo*. The defendant's agents sold stock. It delivered so-called memberships. It obtained the money of plaintiff's intestate and assignor by false pretenses and representations as to what it was selling. Plaintiff's intestate and assignor and plaintiff had a right to rescind. The record shows that the secretary of State ordered defendant to default and cancel all memberships on which nothing had been paid before June 1, 1925. Defendant sent a release of liability to plaintiff's intestate and assignor in which they were asked to acknowledge that defendant was under no obligation to them. In view of the facts, of the position taken by the State and by defendant that these memberships were worthless, and should

be canceled and defendant released from liability, it was unnecessary for plaintiff's intestate and assignor or for plaintiff to tender back the receipts or certificates of membership before instituting suit. *Stubly v. Beachboard,* 68 Mich. 401; *Pangborn v. Ruemenapp,* 74 Mich. 572; *Joslin v. Noret,* 224 Mich. 240.

The law does not encourage fraud. It does not deny relief because the fraud has been successful. One who has perpetrated a fraud cannot be heard to say that the person defrauded ought not to have relied upon his false pretenses. The proof is conclusive that false representations were made by defendant's agents. They thereby procured the money of plaintiff's intestate and assignor. The false pretenses and representations made are shown to have been a part of a general scheme of defendant's agents to obtain money by false pretenses and representations. That plaintiff's intestate and assignor parted with their money, and defendant's agents received it shows sufficient reliance upon the fraud. *Eaton v. Winnie,* 20 Mich. 156 (4 Am. Rep. 377) ; *Sawyer v. Menominee Loan & Building Ass'n,* 103 Mich. 228; *Smith v. McDonald,* 139 Mich. 225. The testimony was sufficient to warrant the conclusion that plaintiff's intestate and plaintiff's assignor believed and relied upon the false representations made.

Defendant is a building and loan association organized and existing under the laws of the State of Michigan. It is purely a creation of law and exists only by authority of law. It possesses no power or authority except that which is expressly or impliedly conferred on it by law. 14 C. J. p. 51, § 3; *Schuetzen Bund v. Agitations Verein,* 44 Mich. 313 (38 Am. Rep. 270). A corporation which exercises or seeks to exercise corporate powers or privileges of a particular kind ought to be able to point to the law which authorizes the exercise of those powers and privileges. No act for

creating a corporation can be extended to cases not reasonably covered by its terms. The determination of the conditions and powers of corporate existence is peculiarly a matter of policy and requires legislative judgment. *Stewart* v. *Father Matthew Society,* 41 Mich. 67.

Building and loan associations, from some real or imaginary benefit they are supposed to afford the poorer classes of society, are given exceptional advantages over other corporations and private persons. *Phelps* v. *Savings & Loan Ass'n,* 121 Mich. 343. Experience has proved that such associations have not been free from the baleful influence of the desire for money getting. *Stoddard* v. *Building & Loan Ass'n,* 138 Mich. 73.

Section 37, Act No. 255, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 10023 [8]), was passed prohibiting them from directly or indirectly doing a banking business or advertising for or accepting deposits. Plaintiff's intestate and assignor were not depositors in defendant. It was forbidden to receive deposits. One-fifth of the money paid by them went to defendant; four-fifths of it went to defendant's agents. No interest on the money paid to defendant was to be received. Their supposed rights, according to defendant, were subject to cancellation and the money paid by them to confiscation. They did not become stockholders in defendant. They could not vote for directors. They could not participate in the control of defendant. They could not share in dividends in case of winding up defendant. Memberships in defendant as sold were not securities. If plaintiff's intestate and assignor had bought stock in defendant they would have had to pay its full par value.

Defendant procured the money of plaintiff's intestate and assignor and purported to give them the right to deposit money with the defendant. There was then

nothing in the statute authorizing a building and loan association to sell memberships therein independent of the sale of its stock.   These memberships were a subterfuge for procuring from the plaintiff's intestate and assignor money for defendant's agents and defendant.   So common became the frauds perpetrated by the method pursued by defendant, that Act No. 207, Pub. Acts 1925, was passed which provides (§ 5) :

"No membership fee in excess of three dollars, the actual amount of which to be determined by the secretary of State, may be charged for each one hundred dollars of capital stock subscribed nor shall stock or membership certificates be sold or transferred on commission nor at a premium either directly or indirectly. All moneys received from whatever sources, including membership fees, shall be paid into the treasury of the association and disbursed by the proper officers as provided by the by-laws."

Prior to the enactment of this statute, a building and loan association, under the law of this State, had no authority to sell memberships independent of its stock as a security therein, or to exact a fee therefor. By the enactment of Act No. 207, Pub. Acts 1925, the legality of membership fees within the limits of that statute was approved, but money taken by defendant for membership fees prior to the enactment of Act No. 207, Pub. Acts 1925, was improperly taken because such memberships were not legally authorized.

Plaintiff's intestate acted with reasonable promptness.   There was testimony that he was sick.   Defendant's correspondence was designed to lull him into security.   Under such circumstances the law will not refuse relief because he was not diligent, but reposed too much confidence in defendant.   *Miller* v. *Savings Bank*, 227 Mich. 316.

Defendant assigns error because of the argument of plaintiff's counsel.   The argument of defendant's counsel is not reported.   Many of the things stated

by plaintiff's counsel objected to by defendant were within the proof. The trial court charged the jury to disregard some improper remarks when they were made. In some cases the statements of counsel were stricken from the record. Some of them were in reply to defendant's argument. Many of the things stated by plaintiff's counsel might well have been unsaid. Upon the whole record we do not think plaintiff's improper argument sufficient to warrant a reversal of the case. Judgment should be affirmed, with costs.

SHARPE, J. In my opinion this case should be reversed because of the prejudicial argument of plaintiff's counsel, upon which error has been assigned. I quote therefrom:

"Now you aren't hurting me; it is that widow back there and the children that you are hurting; not me. This isn't my suit and if they paid—after I am paid, if I should be, still I should feel that I am in better position than the prosecuting attorney of this county who is here defending this defendant who has come over from Ohio and brought a corps of stock swindling selling agents—"

On objection thereto the court said:

"I think you ought to discuss the testimony and make the applications from that and confine yourself to the testimony." * * *

"The testimony shows they have been authorized to sell fifteen million dollars' worth of memberships to the people of the State of Michigan. They are authorized to mulct the people of the State of Michigan out of fifteen million dollars for the credit of—"

On objection and request for a mistrial the court said:

"I think you ought not to use that word mulct. * * * There have been several things in this case, but I am still going to try to save the case."

He then instructed the jury to disregard "the statement of counsel absolutely."

"Now, it would seem that this association had agents in Detroit to sell all the memberships and stock they had, without importing these high-powered salesmen from the State of Ohio. I have heard of the bandits being imported from one city to another, but I never heard of them going from an entire State and importing a corps of swindling salesmen—we have one in this case."

On renewed objection and request for a mistrial, the court said: "Confine yourself to the testimony."

Over objection, counsel continued:

"Our friends upon the other side can say anything they want to. We are at a disadvantage. We aren't able to express our ideas and to express our contempt of the defendants because they pop up and call it nonsuit. * * *

"Now, there is a string of these stock salesmen and you probably know—I don't know if you know how it works, but I have seen more or less of it. In fact, I was skinned out of $1,000 once myself and possibly they put me on a sucker list, but I never have been since. * * *

"Why, they would take candy from a baby. They did take some in our county, $25. * * *

"You don't blame me for being here, do you? You can hardly blame the prosecutor for being here. If I could get $4 out of every $5, the Lord only knows what I would do, but so help me God, I don't sell stock, even for $4 out of every $5. * * *

"Would you have gone into this if you had known you had to pay $50 a month for 11 years? Nobody said so and nobody understood so. It is just as this lady said and Mr. McCann said; it is absolutely worthless. You can't get your money back. It isn't worth anything more than a whip pocket on a Ford; not a bit. It is no good to any one. Any other companies charge nothing; all the way from nothing to 50 cents."

On objection that there was no testimony bearing

on the statement made, and demand for a mistrial, the court said:    "Strike it out."

The statements complained of, which we have quoted only in part, were not referred to in the general charge. It cannot well be claimed that they were in reply to anything said by opposing counsel.

During the course of the trial, on objection being made to the introduction of prejudicial testimony, and on motion to declare a mistrial therefor, the court said:

"Yes, it is prejudicial.    There is no doubt about it. I presume I really ought to.    If I didn't know this jury as well as I do, I would declare the cause a mistrial, but I think that I will not do so.    I want the jury to disregard the statement of counsel absolutely in the matter and I think that you will be able to do so from my experience with you for the last two or three months."

Later in the trial, when plaintiff's attorney was testifying as a witness for her, he had stated that in November or December, 1924, he was at the office of the defendant.    Quoting again:

"Q. When was the last time you went down there?
"A. I was down there when I sued you for—
"Mr. Newman: Just a minute.
"A. (Continued) Grossman's.
"Mr. Newman: All right; I will ask to have it declared a mistrial on this statement.
"The Court: Strike it out, gentlemen of the jury.    I don't know what I really ought to do with this case, ladies and gentlemen of the jury, I think you can just disregard that retort of Mr. Waters."

This court has repeatedly reversed cases because of the improper argument of counsel.    In *Hillman* v. *Railway*, 137 Mich. 184, reversal was had for this reason alone.    It was there said:

"One cannot read the record without being impressed with the idea that the trial judge got tired of trying to keep counsel within the rules, and that

counsel was not willing to acquiesce in the admonitions and suggestions of the court. The mischief done by the improper argument of counsel was not cured by the judge."

In *Atherton* v. *Defreeze*, 129 Mich. 364, this court said:

"As long as attorneys will resort to such methods, unjustifiable either in law or ethics, courts have no alternative but to set the verdicts aside."

Later cases in which prejudicial argument was held to be ground for reversal are *Reed* v. *Louden*, 153 Mich. 521; *Hughes* v. *City of Detroit*, 161 Mich. 283 (137 Am. St. Rep. 504); *Morrison* v. *Carpenter*, 179 Mich. 207 (Ann. Cas. 1915D, 319); *Stowe* v. *Mather*, 234 Mich. 385. As was said by Mr. Justice STONE in *Morrison* v. *Carpenter, supra:*

"If counsel persist in making such improper arguments, they must take the consequences resulting therefrom."

It is unfortunate that "the consequences" must here be suffered by the client instead of by the attorney.

The judgment is reversed, with costs to appellant, and a new trial ordered.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred with SHARPE, J.