### SHERWOOD v. EVENING NEWS ASSN.

1. LIBEL AND SLANDER—FAIR REPORTS OF COURT PROCEEDINGS PRIVILEGED.

   Faithful and fair report of proceedings in courts of justice are privileged, even though reputations of individuals suffer from publication, and publishers are neither civilly nor criminally liable for their publication.

2. SAME—PUBLICATIONS QUALIFIEDLY PRIVILEGED.

   Fair and impartial reports of judicial, executive, legislative, or other public official proceedings are qualifiedly privileged.

3. SAME—ACTUAL MALICE.

   If alleged libelous article is qualifiedly privileged, it is incumbent upon plaintiff to allege and prove express or actual malice in order to recover.

4. SAME—DIRECTED VERDICT.

   If article is qualifiedly privileged, and record rebuts idea of malice, there is no case for jury.

5. SAME—PUBLICATION BASED ON OFFICERS' CONVERSATION NOT PRIVILEGED.

   Publication of libelous article charging plaintiff with commission of crime, based on alleged conversation with officers, is not report of judicial investigation, and therefore is not privileged.

6. SAME—TRIAL—INSTRUCTION—APPEAL AND ERROR.

   In action against newspaper publisher for libel, instruction that, if defendant fairly and without malice reported and published information given to it or its reporters by sheriff or his deputies, articles so published are qualifiedly privileged, and defendant would not be liable, *held,* more favorable than defendant was entitled to.

7. APPEAL AND ERROR—LIBEL AND SLANDER—IMPROPER ARGUMENT—EXCESSIVE VERDICT.

   In action for libel, improper argument of plaintiff's counsel, resulting in excessive verdict of $10,000, is reversible error, notwithstanding action of trial court in reducing said amount to $3,500.

As to what proceedings in court privilege of publication attaches, see annotation in 16 L. R. A. (N. S.) 953.

Appeal from Lapeer; Smith (Henry H.), J. Submitted October 29, 1931. (Docket No. 95, Calendar No. 35,823.) Decided December 8, 1931. Rehearing denied March 3, 1932.

Case by Edward Sherwood against the Evening News Association, a Michigan corporation, and another for libel. Verdict and judgment for plaintiff. Defendants appeal. Reversed, and new trial granted.

*Neithercut & Neithercut (George W. Des Jardins,* of counsel), for plaintiff.

*Stevenson, Butzel, Eaman & Long (Leo W. Kuhn,* of counsel), for defendants.

POTTER, J. Plaintiff brought suit against defendants to recover damages alleged to have been suffered by reason of publication in the Detroit News of an article alleging in substance that he had participated as a bandit in a gun battle with the police in the village of Peck, been wounded, stolen a car to escape, been apprehended, and placed in jail. Plaintiff was not the bandit, did not participate in the gun battle, was not shot, did not steal a car, was not arrested, or sent to jail. Upon the trial plaintiff recovered a verdict of $10,000. This was reduced to $3,500 by the trial court, and judgment entered thereon. Defendants appeal.

Appellants say two questions are raised: *First,* In a libel action is defendant, in the absence of malice, privileged in publishing a true, a fair, and accurate statement of information received from the sheriff and his deputies concerning the official acts of such public officers? *Second,* Can argument of counsel, which is so prejudicial it tends to inflame the minds of the jury in giving a verdict which they

otherwise would not give, be cured by the court by granting a remittitur?

There is no doubt but that just prior to the time the article was published there was a gun battle in the village of Peck between officers and bandits, that a bandit was shot in the jaw and was subsequently apprehended and taken to jail in Port Huron, where he gave his name as Ed Sherwood, and his name was so entered upon the jail register. A State police officer asked him if he was Ed Sherwood who used to live at Clifford. The bandit said "No." Deputy sheriff French, whose duty it was to register the prisoners brought to the jail at Port Huron, thereafter told defendant's reporter that Sherwood had been identified by trooper Milligan as Ed Sherwood he used to know in Clifford. In the article published by the Detroit News, Ed Sherwood who used to be in Clifford was spoken of as a bandit who had participated in the gun battle, been wounded, stolen a car in attempting to escape, been arrested, jailed, and had been identified by trooper Milligan. The important question is whether these facts as communicated by the officer, French, to defendants' reporter, together with the jail register showing the name of the prisoner to be Ed Sherwood, amounts to a privilege.

It is well settled that a faithful and fair report of the proceedings in courts of justice are privileged, even though the reputation of individuals incidentally suffer from their publication, and for the publication of faithful, true, and fair reports of judicial proceedings publishers are neither civilly nor criminally liable. *Wason* v. *Walter*, L. R. 4 Q. B. 73; *Bromage* v. *Prosser*, 4 B. & C. 247, 255 (107 Eng. Repr. 1051); *Taylor* v. *Hawkins*, 16 Q. B. 308, 321 (117 Eng. Repr. 897); *Davison* v. *Duncan*, 7 E. & B. 229 (119 Eng. Repr. 1233). The foundation of this

privilege was said by Justice Wightman in the case last cited, to be the superior benefit of the publicity of judicial proceedings which must counterbalance the injuries to individuals which at times may be great.

Fair and impartial reports of judicial, executive, legislative, or other public official proceedings are considered as qualifiedly privileged. 36 C. J. p. 1276. In *McClure* v. *Review Pub. Co.*, 38 Wash. 160 (80 Pac. 303), defendant published an article detailing plaintiff's pursuit, arrest, trial, and acquittal of the offense of receiving stolen property. It was said:

"The articles are undoubtedly qualifiedly privileged. That being true, they are not libelous *per se,* and, no express malice being alleged, and there being nothing in the articles themselves, or in the circumstances surrounding their publication, to indicate malice—the desire evidently being only to publish sensational news in a sensational and somewhat flamboyant and embellished style, the publishers are not legally responsible in damages."

In *People's United States Bank* v. *Goodwin,* 148 Mo. App. 364 (128 S. W. 220), it was said of the acts of the postmaster general:

"We simply say that in our judgment a fair publication, made as a matter of news or public concern and without actual malice, of what such an officer does officially and the reasons he gives for his acts, should be privileged, and we hold it is upon persuasive authorities."

In *Conner* v. *Standard Publishing Co.*, 183 Mass. 474 (67 N. E. 596), it was held that the record of the findings of a State fire marshal being public records, their publication was privileged.

"It is within the qualified privilege of a newspaper to publish in good faith as current news all

such matters as involve open violation of law or public misconduct such as justifies police interference, and matters in connection with and in aid of the prosecution of inquiries regarding the commission of a crime, even though the publication may reflect on the actors and tend to bring them into public disgrace or contempt.'' *Kilgore* v. *Koen,* 133 Ore. 1 (288 Pac. 192).

See, also, *Meteye* v. *Times-Democrat Pub. Co.,* 47 La. Ann. 824 (17 South. 314).

If the alleged libelous article is qualifiedly privileged, it is incumbent upon plaintiff to allege and prove express or actual malice. Odgers on Libel and Slander (6th Ed.), p. 265. If the article is qualifiedly privileged and the record rebuts the idea of malice, there is no case for the jury. *Tilles* v. *Pulitzer Pub. Co.,* 241 Mo. 609 (145 S. W. 1143). These cases state the general rule. They are all based upon the consideration of records in judicial proceedings or matters of public record. Questions more analogous to those involved in the case at bar were before this court in *Davis* v. *Marxhausen,* 86 Mich. 281; *Davis* v. *Marxhausen,* 103 Mich. 315; *Jastrzembski* v. *Marxhausen,* 120 Mich. 677; *Clair* v. *Battle Creek Journal Co.,* 168 Mich. 467.

In *Davis* v. *Marxhausen,* 86 Mich. 281, plaintiff sued defendant, publisher of the Detroit Abend-Post, for libel in publishing an article charging he had been arrested for theft.

"A man by the name of Michael Davis had been arrested for the theft, but he did not live at the place designated in the article, which was the residence of the plaintiff. It is unnecessary to state here how the mistake occurred."

Subsequently the Detroit Abend-Post published an article stating the Michael Davis arrested for

theft did not live at 311 E. Columbia Street, the place of residence of plaintiff, and later published another article stating the mistake and that Michael Davis living at 311 E. Columbia street was an honest man in all respects and through mistake he had suffered an unintentional wrong. The libel consisted in referring to plaintiff as the person arrested when in fact he was not. It was held under the facts in that case plaintiff was entitled to nominal damages though no actual damages had been proven.

In *Davis* v. *Marxhausen,* 103 Mich. 315, the same case was again before the court. It was said:

"It was competent for the defendant to offer testimony to show the want of actual malice, as that the publication was made through mistake, and that all proper precautions were observed, by which the damages would be reduced to such a sum as would compensate for the injury which must inevitably have resulted."

In *Jastrzembski* v. *Marxhausen, supra,* plaintiff sued defendant, publisher of the Detroit Abend-Post, for libel. Plaintiff and his wife had some trouble and she went to police headquarters and related what she alleged to be her troubles. She had with her a picture of a girl and her husband taken together. The wife charged her husband with criminal conduct with the girl and the police officers advised her to go to the police justice's office. She went to the police justice and made similar statements. She made a complaint for nonsupport under the disorderly act and a warrant was issued for the arrest of plaintiff. The newspaper published an article in which it was alleged plaintiff had left his wife and run away with another woman. It is said:

"The publication was not privileged. The conversation between the officer and plaintiff's wife was

not a judicial investigation. Reports made to police officers charging persons with crime are not privileged communications, and those who publish such reports do so at their peril. * * * There were no court proceedings upon which to base the question of privilege. The authorities cited by counsel, based upon the publication of court proceedings, do not apply. The statements published were not gathered from any proceedings in court, but the information was obtained from parties entirely outside of any court. The only defense, therefore, that could be made to the publication, was its truthfulness.''

In *Clair* v. *Battle Creek Journal Co., supra,* where a similar question was before the court, it is said:

''Without proof of injury from the words, the plaintiff was entitled to recover the actual damages to her reputation and feelings which the law presumes will flow from the commission of the act. And good faith in the publication of a libelous charge in no way affects the defendant's liability to compensate the plaintiff for her actual damages to reputation or feelings.''

The trial court charged the jury:

''The testimony undisputed is that even the reporter, no one connected with the newspaper office so far as the testimony shows, knew anything about the plaintiff here, knew where he lived, never had any dealings with him and had the slightest malice toward him, and so as I say to you in this case there is no proof of malice. The article in question is one purporting to publish the report of the officers in pursuit of alleged bandits, and this is the law as I conceive it to be as applied to this case. So long as the newspaper fairly and without malice reports and publishes the information given it, or its reporters, by the sheriff and his deputies, the articles so published are qualifiedly privileged, and the de-

fendant is not liable in damages, and so if you find that to be a fact that the newspaper, this newspaper, fairly and without malice reported and published information given it, or its reporters, by the sheriff of Port Huron, and his deputies, or by any of them connected with, duly connected with, the sheriff's office, the articles so published are qualifiedly privileged, and the defendant is not liable in damages.
\* \* \*

"When a newspaper fairly and without malice or intent to harm, publishes the progress being made in a criminal matter upon the information received from peace officers in charge of the examination involving crime, the articles so published are qualifiedly privileged, and the newspaper would not be liable in damages."

This charge was more favorable than defendant was entitled to.

Defendant assigns error on account of the improper argument of counsel for plaintiff. In addressing the jury, Mr. Neithercut said:

"I say that the jury should put fear into this newspaper. \* \* \* That is what I want you to do. \* \* \* They are after money. They have wronged him deliberately to get money. \* \* \* We say, members of the jury, that this man has been damaged, he has been damaged, in his business, in his reputation, he has been damaged in his feelings, he has been humiliated, he has been disgraced, he has been hung up as an object of ridicule by this defendant, and for the purpose of putting dollars and cents into the coffers of this defendant. It wasn't a mistake made with no intent for gain, if it were a mistake made, but all they want is to put dollars and cents in the coffers of this defendant. \* \* \* Now I ask you to take out of the coffers of this corporation some of that money that they got when they sold 411,000 and some odd of those news-

papers at ten cents a piece making 40,000 and some hundred dollars, and give to this man. This corporation has no right to keep it all.''

And Mr. Des Jardins said:

''But they are a big corporation, capable attorneys that can come here, and the individual that combats them usually is in ordinary circumstances or hasn't a great amount to spare. They take their chances. They say to get the news. Get it and we will take a chance on the outcome. They took this chance and I don't know why they are here weeping about it. * * * Gentlemen, Trooper Milligan is the most courageous one that has taken that witness stand in this case. Why? He sat up there and he said to the Detroit News, powerful as it is, I will tell the truth and you can do to me what you want to do, and they call him a coward. Let's analyse the story. Let's see who was telling the truth? Whether their powerful influence with that powerful influence of the press which caused those deputies to give the paper the break against this stranger unknown to them, or whether Trooper Milligan was stating the truth. * * * Is there any reason why they should keep that blood money in their treasury? * * * The Detroit News grossly, without reason, or without thought but for their own benefit, for the benefit of their own pocketbook, saw fit to libel Edward Sherwood. We are only here asking that we receive compensation for the damages that we have suffered, and we want you to remember this in computing that amount, they did not voluntarily give us every dollar we get, we had to come here and fight for it, and it is expensive to fight.''

This court has considered the question of improper argument many times. Many cases are cited in *Atherton* v. *Defreeze,* 129 Mich. 364; *Morrison* v. *Carpenter,* 179 Mich. 207 (Ann. Cas. 1915D,

319); *Daly* v. *Railroad Co.*, 197 Mich. 340; and *Johnson* v. *Mutual Savings Association*, 242 Mich. 558. For this reason judgment is reversed, and new trial ordered.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.