MEYER v HUBBELL

Docket No. 58169. Submitted April 22, 1982, at Lansing.—Decided July 12, 1982. Leave to appeal applied for.

James A. Meyer filed a two-count complaint against Stuart D. Hubbell and others in Grand Traverse Circuit Court alleging perjury or false swearing and conspiracy to commit the same in connection with testimony given by defendants at a criminal trial. Plaintiff thereafter sought to amend his complaint to include intentional infliction of mental distress and interference with prospective economic advantage. Defendants filed motions for summary judgment and accelerated judgment. Plaintiff's motion to amend was denied and defendants' motions for accelerated judgment were granted, R. Max Daniels, J. Plaintiff appeals. *Held:*

1. Michigan does not recognize a civil cause of action for perjury or false swearing, therefore the trial court properly ordered accelerated judgment in favor of defendants because plaintiff's complaint either alleged a cause of action which does not exist in Michigan or alleged a libel action well after the one-year period of limitation for such actions had expired.

2. The trial court did not err in refusing to permit plaintiff to amend his complaint to include intentional infliction of mental distress since all elements of that tort were not satisfied under the facts of the case.

3. Plaintiff failed to allege any facts which would rebut the

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Conspiracy § 63.
 Actionability of conspiracy to give or to procure false testimony or other evidence. 31 ALR3d 1423.
[2] 50 Am Jur 2d, Libel and Slander § 1.
[3] 61A Am Jur 2d, Pleading § 312.
[4] 74 Am Jur 2d, Torts §§ 18, 31, 32.
[5, 6] 50 Am Jur 2d, Libel and Slander §§ 333, 335, 505.
[6] 20 Am Jur 2d, Courts §§ 61, 62.
[7] 16A Am Jur 2d, Constitutional Law §§ 496, 501.
[8, 12] 50 Am Jur 2d, Libel and Slander §§ 244, 250.
[9, 12] 50 Am Jur 2d, Libel and Slander §§ 103, 104.
[10, 11] 50 Am Jur 2d, Libel and Slander § 390.

presumption that defendants' testimony in the criminal trial was relevant. As a result, defendants' testimony was absolutely privileged and cannot be the basis of alleged injuries to plaintiff's reputation, credibility, character, business, or professional status.

4. Tortious interference with economic relations is not actionable in and of itself where the interference is caused by defamatory statements. However, even assuming that such interference were actionable in and of itself, plaintiff would not be entitled to amend his complaint to include such a cause of action because of the privileged nature of the conduct complained of. The trial court's decision to deny plaintiff's motion to amend was correct.

Affirmed.

1. ACTIONS — FALSE TESTIMONY.

There exists no civil action for damages arising out of the giving of false testimony, subornation of false testimony, or conspiracy to give or procure the giving of false testimony as between the parties to the action in which the false testimony was given.

2. LIBEL AND SLANDER — REPUTATION.

The gist of an action for libel is injury to the plaintiff's reputation by false and defamatory attacks.

3. PLEADING — AMENDMENT OF PLEADINGS — COURT RULES.

A motion to amend pleadings should ordinarily be granted absent factors such as undue delay, bad faith or a dilatory motive, or where such an amendment would be futile; the trial judge should ignore the substantive merits of a claim or defense unless it is legally insufficient on its face, making it futile to allow the amendment (GCR 1963, 118.1).

4. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

One who, by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm; liability is confined to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

5. LIBEL AND SLANDER — PUBLISHERS — COURT PROCEEDINGS.

Faithful and fair reports of the proceedings in courts of justice

are privileged, even though the reputations of individuals incidentally suffer from their publication, and for the publication of faithful, true, and fair reports of judicial proceedings publishers are neither civilly nor criminally liable.

6. NEWSPAPERS — COURT RECORDS.

The press cannot be held liable for truthfully publishing information contained in official court records open to public inspection.

7. NEWSPAPERS — LIBERTY OF THE PRESS.

The liberty of the press is no greater and no less than the liberty of every citizen.

8. WITNESSES — TESTIMONY — ABSOLUTE PRIVILEGE.

Statements made by witnesses in the course of judicial proceedings are absolutely privileged provided they were relevant, material or pertinent to the issue being tried, and a presumption of relevancy of the statements arises once it is established that the statements were made during the course of a judicial proceeding.

9. TORTS — TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS.

The elements of the tort of tortious interference with economic relations are: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

10. TORTS — TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS — LIMITATION OF ACTIONS.

There is a three-year statute of limitations period for actions alleging tortious interference with economic relations (MCL 600.5805[8]; MSA 27A.5805[8]).

11. LIBEL AND SLANDER — DEFAMATION — DAMAGE TO ECONOMIC RELATIONS — LIMITATION OF ACTIONS.

Damage to economic relations caused by defamatory statements is merely incidental to an action for defamation and does not present a separate cause of action; in such a case, the applicable period of limitation is one year (MCL 600.5805[7]; MSA 27A.5805[7]).

12. LIBEL AND SLANDER — JUDICIAL PROCEEDINGS — ABSOLUTE PRIVI-
    LEGE — INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVAN-
    TAGE — DEFENSES.

    The absolute privilege afforded to statements made in judicial
    proceedings is available as a defense to suits for interference
    with prospective economic advantage.

*Sumpter & Loznak, P.C.* (by *Donn Hubbell*), for
plaintiff.

*Chirco, Donaldson, Herrington & Runstadler,* for
defendants Blakeslee.

*Houlihan, Elhart & Bishop,* for defendants Hub-
bell, Wise & Houlihan.

James R. McCormick, *in propria persona.*

Before: M. J. KELLY, P.J., and CYNAR and G. R.
COOK,* JJ.

CYNAR, J. On September 11, 1980, plaintiff,
James A. Meyer, filed *in propria persona* a two-
count civil complaint against the defendants in
Grand Traverse County Circuit Court. The com-
plaint alleged "perjury/false swearing" and con-
spiracy to commit the same. Plaintiff subsequently
filed a motion, per counsel, on October 29, 1980,
seeking to amend his complaint. Defendants filed
motions for summary judgment and accelerated
judgment. On December 8, 1980, a hearing was
held on these various motions. The trial court
issued a written opinion on April 30, 1981, which
denied plaintiff's motion to amend and granted
accelerated judgment in favor of the defendants.
From this decision plaintiff appeals as of right.

    The alleged false statements involved in this
action arise from a criminal proceeding filed by

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the Grand Traverse prosecutor at the request of the plaintiff against defendant John Blakeslee for wiretapping, in violation of MCL 750.539c; MSA 28.807(3).

Briefly summarized, the criminal proceedings were brought on the allegations of plaintiff to the effect that Blakeslee had wiretapped plaintiff's phone after Blakeslee learned that his wife was having an affair with the plaintiff. Blakeslee was then the prosecuting attorney for Grand Traverse County. Blakeslee's wife subsequently divorced him, was awarded custody of the children and thereafter married plaintiff. In dismissing the charges against Blakeslee the trial judge stated, on the basis of the testimony of the defense witnesses, defendants herein, that plaintiff had attempted to commit blackmail and extortion against several people. The trial judge stated that plaintiff had attempted to blackmail associates of Blakeslee to influence him not to contest Blakeslee's ex-wife's suit for an increase in child support and in order to convince Blakeslee to drop his suit seeking visitation rights. This Court affirmed the trial judge's dismissal of the wiretap charges in an unpublished memorandum opinion.

Following the dismissal of the wiretap charges against John Blakeslee, a series of articles appeared in the Traverse City Record-Eagle newspaper speculating on whether any improprieties occurred in the prosecution of the case. Defendants Hubbell and Houlihan felt these articles were misleading and therefore distributed approximately 500 copies of the circuit court judge's opinion to various people in the community. These defendants attached a cover letter to the opinion asking the readers to determine for themselves whether the newspaper's claim of a "cover-up"

was valid. The distribution of these opinions occurred in late January of 1978.

Plaintiff appeals as of right from the trial court's grant of accelerated judgment and refusal to allow plaintiff to amend his complaint.

# I

We find no merit to plaintiff's argument that a civil cause of action for perjury or false swearing should be recognized in Michigan. This Court held to the contrary in *Rogoski v Muskegon,* 107 Mich App 730; 309 NW2d 718 (1981), and we adhere to that decision under the circumstances in the instant case. The trial court did not err in finding that there is no such cause of action in Michigan.

We also find that the trial court properly interpreted the substance of plaintiff's complaint as being an action for libel. The gist of an action for libel is injury to the plaintiff's reputation by false and defamatory attacks. *Campos v General Motors Corp,* 71 Mich App 23, 25; 246 NW2d 352 (1976), see also *Croton v Gillis,* 104 Mich App 104, 108; 304 NW2d 820 (1981). In *Campos* the issue before the Court was the nature of the cause of action stated in the plaintiff's complaint. This Court held that the trial judge erred in considering the case as one solely of defamation and not one which involved the individual cause of action of intentional infliction of emotional distress. *Campos, supra,* 27.

In the case at bar, by contrast, plaintiff alleged that the perjury and conspiracy to perjure caused damage to his "reputation, credibility, character, business and professional status". Plaintiff alleged no other harm to himself in this pleading which

could give rise to an intentional infliction of emotional distress claim. Since plaintiff's complaint was properly interpreted to allege libel, the trial judge was correct in applying the one-year statute of limitations period to bar the action. MCL 600.5805(7); MSA 27A.5805(7). Plaintiff did not file his complaint until September 11, 1980, whereas the publication of the purported libelous statements occurred in January of 1978. Since the plaintiff brought suit well after the period of limitation had run, it was not error for the trial judge to grant accelerated judgment pursuant to GCR 1963, 116.1(5).

The trial judge properly ordered accelerated judgment in favor of defendants, inasmuch as the plaintiff's complaint either alleged a cause of action which did not exist in Michigan or alleged a libel action well after the one-year statute of limitations period had expired. Plaintiff's claim of error as to this issue is therefore meritless.

## II

Plaintiff also argues that the trial court erred in denying plaintiff's motion to file an amended complaint alleging intentional infliction of mental distress and interference with prospective economic advantage.

In Michigan, amendment of pleadings is governed by GCR 1963, 118.1, which provides that leave to amend should be "freely given when justice so requires". In *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656-659; 213 NW2d 134 (1973), the Supreme Court opined that a motion to amend should ordinarily be granted absent factors such as undue delay, bad faith or a dilatory mo-

tive, or when such an amendment would be "futile". The trial judge should ignore the substantive merits of a claim or defense unless it is legally insufficient on its face, making it "futile" to allow the amendment. *Id.,* 660; *Biff's Grills, Inc v State Highway Comm,* 75 Mich App 154, 160; 254 NW2d 824 (1977), *lv den* 401 Mich 827 (1977).

Plaintiff's first amended cause of action is intentional infliction of emotional distress. In *Fry v Ionia Sentinel-Standard,* 101 Mich App 725, 731-732; 300 NW2d 687 (1980), this Court stated:

"A claim for intentional infliction of emotional distress has been defined as follows:

" '(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 390; 239 NW2d 380 (1976), citing 1 Restatement Torts 2d, § 46, p 71.

"Liability is confined to conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'. *Warren v June's Mobile Home Village & Sales, Inc, supra,* 391."

But see *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 421; 295 NW2d 50 (1980), *reh den* 409 Mich 1116 (1980) (Supreme Court expressed no opinion on the accuracy of this Court's observation that Michigan recognizes this tort).

Defendants Hubbell and Houlihan's act of circulating a judicial opinion to several hundred members of the community cannot be characterized as "outrageous" or "extreme" conduct so as to expose defendants to liability. As noted in defendants'

briefs, the opinion was reproduced and circulated by defendants Hubbell and Houlihan in order to set the record straight as to what the trial judge held in the wiretap case against defendant John Blakeslee. A series of front page articles had appeared in the Traverse City Record-Eagle, the city's only newspaper, probing plaintiff's allegations that government officials had covered up criminal activity by Blakeslee when he was prosecutor of the county. The defendants felt they could not get their version of the events accurately reported, so they sent out 500 exact copies of the trial judge's opinion with a cover letter asking the recipients to read the opinion and then determine for themselves what had transpired. This "publication" by circulation of a judicial opinion is not the type of activity which opens itself up to liability on intentional infliction of emotional distress grounds.

In *Sherwood v Evening News Ass'n,* 256 Mich 318, 320-321; 239 NW 305 (1931), the Michigan Supreme Court stated:

"It is well settled that a faithful and fair report of the proceedings in courts of justice are privileged, even though the reputation[s] of individuals incidentally suffer from their publication, and for the publication of faithful, true, and fair reports of judicial proceedings publishers are neither civilly nor criminally liable. *Wason v Walter,* 4 LR-QB 73; *Bromage v Prosser,* 4 B& C 247, 255 (107 Eng Rep 1051); *Taylor v Hawkins,* 16 QB 308, 321 (117 Eng Rep 897); *Davison v Duncan,* 7 E &B 229 (119 Eng Rep 1233). The foundation of this privilege was said by Justice Wightman in the case last cited, to be the superior benefit of the publicity of judicial proceedings which must counterbalance the injuries to individuals which at times may be great."

See, also, *Bowerman v Detroit Free Press,* 287 Mich 443, 446; 283 NW 642 (1939); *Hayes v Booth*

*Newspapers, Inc*, 97 Mich App 758, 774; 295 NW2d 858 (1980).

The United States Supreme Court has repeatedly held that the press cannot be held liable for truthfully publishing information contained in official court records open to public inspection. *Time, Inc v Firestone*, 424 US 448, 455; 96 S Ct 958; 47 L Ed 2d 154 (1976); *Cox Broadcasting Corp v Cohn*, 420 US 469; 95 S Ct 1029; 43 L Ed 2d 328 (1975). The liberty of the press is no greater and no less than the liberty of every citizen. *Curtis Publishing Co v Butts*, 388 US 130, 149-150; 87 S Ct 1975; 18 L Ed 2d 1094 (1967); *Pennekamp v Florida*, 328 US 331, 364; 66 S Ct 1029; 90 L Ed 1295 (1946); *Van Lonkhuyzen v Daily News Co*, 203 Mich 570, 588; 170 NW 93 (1918); *McAllister v Detroit Free Press Co*, 76 Mich 338, 357; 43 NW 431; 15 AS 318 (1889). Thus, defendants Hubbell and Houlihan had a constitutional right to circulate the trial judge's opinion without exposing themselves to subsequent civil liability.

Accordingly, the circulation of a public document was not "outrageous" or "extreme" conduct within the meaning of the tort of intentional infliction of emotional distress. Since this element of the emotional distress tort cannot be satisfied, plaintiff could not have succeeded in his suit against defendants and it would have therefore been futile to allow plaintiff to amend his complaint to include the intentional infliction of emotional distress tort. Thus, the trial judge did not err in refusing to permit plaintiff to amend his complaint as to this tort.

Plaintiff contends that the testimony given at the criminal trial was also the basis of the subsequent complained-of injuries. We disagree. The activity on which plaintiff seems to ground his

amended complaint was the circulation of the judicial opinion.

Even if we accept plaintiff's argument on appeal, however, the result would be the same.

It is well settled in Michigan that statements made by witnesses in the course of judicial proceedings are absolutely privileged provided they were relevant, material, or pertinent to the issue being tried. *Sanders v Leeson Air Conditioning Corp,* 362 Mich 692, 695; 108 NW2d 761 (1961); *Pagoto v Hancock,* 41 Mich App 622, 623; 200 NW2d 777 (1972). This privilege gives witnesses relative freedom to express themselves without fear of retaliation. *Sanders, supra,* 695. A presumption of relevancy of the statements arises once it is established that the statements were made during the course of a judicial proceeding. *Pagoto, supra,* 623. Plaintiff did not plead any facts to take the case out of this privilege. Although plaintiff alleged that the defendants perjured themselves by testifying falsely at trial, he did not allege any facts whatsoever to the effect that the testimony was not relevant, material, or pertinent. Thus, the absolute privilege was conclusively established by the failure of plaintiff to plead facts which would rebut the presumption.

The second count of the plaintiff's amended complaint in essence alleged tortious interference with economic relations. The elements of this tort are: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted. *Wilkerson v Carlo,* 101 Mich App 629, 632; 300 NW2d 658

(1980), *lv den* 411 Mich 984 (1981). There is a three-year statute of limitations period for actions alleging tortious interference with economic relations. *Id.,* 634.

In *Wilkerson,* this Court disagreed with another panel's conclusion in *Harrison v Arrow Metal Products Corp,* 20 Mich App 590, 608-609; 174 NW2d 875 (1969), *lv den* 383 Mich 816 (1970), wherein it was held that any damage to economic relations was merely incidental to defamation and did not present a separate cause of action. We agree with *Harrison* on this question and so we find that the trial judge's decision in the instant case to deny plaintiff's motion to amend was correct since the amended complaint alleged a cause of action which does not exist. Even if *Wilkerson's* recognition of an independent tort for tortious interference with economic relations is correct, plaintiff would not be entitled to relief because of the privileged nature of the conduct complained of.

The absolute privilege afforded to statements made in the judicial proceedings is available as a defense to suits for interference with prospective economic advantage. See Prosser, Torts (4th ed), § 130, p 953, fn 97, citing *Rainier's Dairies v Raritan Valley Farms,* 19 NJ 552, 564; 117 A2d 889, 895 (1955).

In the case at bar the defendants' alleged interference with plaintiff's prospective economic advantage occurred through defendants' testimony given at trial and circulation of the opinion which incorporated this testimony. The testimony given at trial was privileged and immune from any subsequent civil action inasmuch as it was relevant to the issue being determined. The publication of the judicial opinion was a valid exercise of the First Amendment freedom of speech to which

no civil liability could attach. Under the circumstances in the case before us, the alleged interference with the plaintiff's prospective economic advantage is not actionable. The state's interest in providing witnesses immunity from subsequent civil suits and the individual's free speech interest outweigh plaintiff's economic interest which was purportedly interfered with.

Since it is clear that plaintiff's tortious interference with prospective economic advantage claim could not have succeeded at trial, it would have been futile for the trial judge to allow the amendment. See *Biff's Grills, Inc, supra.*

Affirmed.