JOHN MINER v. THE DETROIT POST AND TRIBUNE COMPANY.

*Newspaper libel—Privilege—Oppressive acts of judicial functionaries.*

In an action for newspaper libel the judge instructed the jury that a portion of the article complained of was privileged, but permitted them to consider it with the rest in deciding from the general spirit of the article whether that part which was left to their consideration, was malicious. *Held* error.

It is matter of privilege to call public attention to the act of a judicial officer in ordering a person into confinement without a charge against him, or in requiring bail in an amount which, considering the prisoner's probable means and position in life, he is unable to pay; these are violations of the most important guaranties of constitutional freedom, and are matters of public concern.

Error to Superior Court of Detroit. Submitted June 20. Decided October 31.

CASE for libel. Defendant brings error. Reversed.

*Henry M. Cheever* and *George V. N. Lothrop* for appellant. Publications made in the discharge of a duty are privileged: *Gassett v. Gilbert* 6 Gray 94; where a party charged with a libel publishes an article complained of,

either in the discharge of any duty he is required to perform, or to protect his own personal interest or the interest of others, or those of society at large, *the legal presumption of malice is rebutted,* and in order to maintain the action the plaintiff must prove express malice : Starkie on Slander 292; *Somerville v. Hawkins,* 10 C. B. 583 ; *Toogood v. Spyring* 4 Tyrwh 582 : 1 C. M. & R. 118 ; *Bradley v. Heath* 12 Pick. 164 ; *White v. Nicholls* 3 How. 266 ; *Fairman v. Ives* 5 B. & Ald. 642 ; *State v. Burnham* 9 N. H. 34 ; *O'Donaghue v. M'Govern* 23 Wend. 26 ; *Remington v. Congdon* 2 Pick. 310 ; *Swan v. Tappan* 5 Cush. 110 ; *Padmore v. Lawrence* 11 Ad. & El. 382; *Bromage v. Prosser* 4 B. &. C. 247; *Blackham v. Pugh* 2 C. B. 611 ; *Todd v. Hawkins* 8 C. & P. 88; *Adcock v. Marsh* 8 Ired. 360; *Harrison v. Bush* 5 E. & B. 344 ; *Whitely v. Adams* 15 C. B. (N. S.) 417 ; *Peocock v. Reynal* 2 Brownl. & G. 151 ; *Clark v. Molyneux* L. R. 3 Q. B. Div. 237 ; *Streety v. Wood* 15 Barb. 105 ; *Van Wyck v. Aspinwall* 17 N. Y. 190 ; *Howard v. Thompson* 21 Wend. 319 ; the publication of a report of matters of public interest is privileged and not actionable unless legal malice is proved : *Kelly v. Tinling* 1 Q. B. 699 ; *Parmiter v. Coupland* 6 M. & W. 105 ; *Cox v. Feeney* 4 F. & F. 13 ; *Purcell v. Sowler* 2 C. P. Div. 218 ; *Lewis v. Levy* 27 L. J. (N. S.) Q. B. 282 ; *Woodgate v. Ridout* 4 F. & F. 223 ; *Hibbins v. Lee* id. 243 ; *Gott v. Pulsifer* 122 Mass. 235 ; *Com. v. Featherston* 9 Phil. 594 ; *Seymour v. Butterworth* 3 F. & F. 372 ; *Parmiter v. Coupland* 6 M. & W. 107 ; *Ogden v. Mortimer* 28 L. T. (N. S.) 801 ; statements made to a person or body having jurisdiction to enquire into the matter, are not libelous ; nor is the publication of such statements, if made fairly and honestly : *Barrows v. Bell* 7 Gray 301 ; *Farnsworth v. Storrs* 5 Cush. 412 ; *Shurtleff v. Stevens* 51 Vt. 501 ; the publication of judicial proceedings taken before magistrates is privileged to the same extent as the proceedings of the trial court ; so are fair comments or criticisms : *McBee v. Fulton* 47 Md. 403 ; *Curry v. Walter* 1 Esp. 456 ; *Ackerman v. Jones* 37 N. Y. Sup. Ct. 42 ; but see *Duncan v. Thwaites* 3 B. & C. 556 ; *Stanley v. Webb* 4

Sandf. 21; *Gazette Co. v. Timberlake* 10 Ohio St. 548; public policy demands that the official conduct of those who fill offices of public trust and confidence, in the administration of which the whole community has an interest, should be open to unlimited criticism; and if this is fair and made with good intent, express malice must be proved to render the critic liable; *Wilson v. Fitch* 41 Cal. 386; *Hunt v. Bennett* 19 N. Y. 175; *Mott v. Dawson* 46 Iowa 533; *Scripps v. Foster* 41 Mich. 742; fair and honest discussion of any matter of public interest is privileged and not actionable unless made with express malice: *Henwood v. Harrison* L. R. 7 C. P. 622; *Tabart v. Tipper* 1 Camp. 351; *Gathercole v. Miall* 15 M. & W. 340; *Campbell v. Spottiswoode* 3 B. & S. 769; *Palmer v. Concord* 48 N. H. 211.

*John Atkinson* for appellee.

COOLEY, J. The plaintiff is, and was in June, 1881, police justice of the city of Detroit. The defendant is publisher of a daily newspaper in that city. June 23, 1881, defendant published in its paper, concerning the plaintiff, the following article:

## "MORE OF MINER.

A few days since a complaint was made before Justice Miner against a Chinaman. Without the assent of the complainant, Miner inserted the name of a second Chinaman, against whom no complaint was made and whom no one charged with being connected with the offense.

At the examination afterwards held, Miner admitted that he inserted the second name on his own motion, and though the evidence of the complainant completely exonerated the second man, and it was shown that he was not present at the commission of the alleged offense, Miner bound him over for trial under heavy bonds. Judge Swift, on the facts coming to his knowledge, released this second man.

There is no accounting for Miner's action. In this case it was an inexcusable outrage. If he would enforce the law upon the multitude of offenders brought before him, if he would discharge his duty on the complaints for violating the liquor laws and gambling laws, people would be more lenient in their judgment of him. But he does not and

apparently will not.    Instead of that he turns upon a help-
less Chinaman, who has no political influence to sustain him
and much prejudice to combat.    It was a contemptible act
and a cowardly act.    And instead of satisfying the people
who are demanding that he shall enforce the laws, it will
excite their disgust and invite them to ask why it is that
Justice Miner prosecutes and oppresses the weak and per-
mits the strong to go unwhipt of justice."

For this publication suit was brought by plaintiff in the
Superior Court of Detroit.    The defendant justified the pub-
lication as true.

When the case went to trial the defendant contended that
the article related to matters of public interest and import-
ance, and was for that reason privileged.    The judge of the
Superior Court seems to have assented to this view, so far as
the part of the article relating to the liquor law and the law
against gambling was concerned, and he ruled that that por-
tion of the article must not be considered by the jury as a
ground for recovery.    As to the part which relates to the
two Chinamen a different conclusion was announced.
" That," he said, " is a specific charge.    It accuses the plaint-
iff of direct moral malfeasance, so to speak ; accuses him of
a direct act of oppression and a direct outrage ; accuses him
of an act nearly amounting to a crime.    It does not purport
to be a report of the trial.    It in no sense purports to give
the proceedings of it ; but it gives such conclusions as are
drawn by whoever made the report, either from hearing the
trial or from information given.    Under these circumstances
it appears to me that the defendant stands upon a very dif-
ferent basis from an accusation based upon a report.    A
general expression of an opinion, that in a certain direction a
public officer does not do his duty, is undoubtedly privileged.
Comments made upon a report would be privileged, pro-
vided the report itself justified those comments.    My impres-
sion is that there is no report here.    There is the opinion
of whoever wrote the article, gleaned either from what he
heard or what he saw.    That is all there is of it.    If it was
a report, and from the report the paper had come to the
conclusion that Miner had acted improperly, I think the

paper would have been privileged in saying so. But instead of making a report, there is simply an assertion that the result of everything was in substance that Justice Miner had been guilty of what every person must acknowledge to be a very great outrage, to-wit: oppressing a person because he was poor and obscure, a Chinaman, one who had no influence or friends. That imputes specific moral delinquency."

Under this ruling the parties respectively put in their proofs to support and disprove the justification.

Very strangely, as it seems to me, when the case went to the jury the judge permitted that portion of the charge which he had ruled was privileged, and which he had altogether excluded from the jury as a ground of action, to be made the subject of comment to the prejudice of defendant. "It is privileged," he said, "and therefore not libelous. I think the general spirit of the article may be commented upon, but only with that view; not that the matter of gambling and liquor laws can in any way be the subject of damages, but the tone of the article generally,—I don't see how I can exclude that. Here is an article which, if you will observe it, says, 'there is no accounting for Miner's action in this case. It was an inexcusable outrage. If he would enforce the law upon the multitude of offenders brought before him; if he would discharge his duty in the complaints for violating the liquor laws or gambling laws, people would be more lenient in their judgments of him. But he does not, and apparently will not. Instead of that he turns upon a helpless Chinaman,' etc. You see the two are connected together."

The general tone, then, of the article,—the part privileged, as well as the part not privileged,—was held to be proper subject of comment and consideration, and the jury were left at liberty to take it into account in making up their verdict. But this in effect referred to them the spirit of the article for their judgment upon it, and that was equivalent to submitting to them the question whether, in the part privileged as well as in the remainder, they discovered anything indicative of malice. If the parties had been left

to put in their evidence as to the truth of the whole article, the submission to the jury of the question of actual malice, as broadly as it was submitted, would have been logical and perhaps necessary; but as the law assumes the absence of malice in privileged publications, a ruling which allows the general tone of such a publication to be judged by the jury, in effect says to them, "Though the law says there is no malice here, you are at liberty to find the contrary."

It is perfectly reasonable to assume that counsel, under this ruling, commented freely on the whole article, and that the jury, if that part of the article which related to the liquor and gambling laws seemed to them in bad spirit, did not discriminate very nicely between the charge as a substantive ground of action, and the charge as evidence in its general tone of a bad state of mind and feeling. Indeed it seems to me more than likely that the verdict they returned was really based on this part of the publication. The judge instructed them in substance that if what related to the two Chinamen was shown to be true, defendant was entitled to their verdict; and the record made it very plain that if this charge had been regarded there would have been no recovery. The conclusion seems irresistible that the jury gave damages for malice in that part of the article to which the judge had ruled that malice was not to be imputed.

This error renders a new trial imperative; but it is not, in my opinion, the sole or the principal error in the case. A much more serious and more dangerous error is found in that part of the article which concerned the proceedings in the case of the Chinaman.

On the general subject of privilege of the press I have recently had occasion to express my views with some fullness, and I shall not repeat them here. A brief reference to the facts and to certain general principles will be sufficient for the purpose.

When a judge orders a man into confinement without a charge against him, he deprives him of liberty without due process of law; and in doing so violates the earliest and most important guaranty of constitutional freedom. When

in a case where bail is of right, he demands security in a sum which, considering the position in life and probable means and ability. to give it, of the person accused, is altogether beyond his power, the demand is unreasonable, and for that reason is repugnant to a further provision of the Constitution, the importance of which is only second to the other.   There must be some great and most serious defect in the administration of the law when such things can take place, and the matter is one which concerns every member of the political community; for if constitutional principles fail to protect the most humble of the people, they protect no one.

The defendant contends that to call public attention to what so vitally concerns the public is matter of privilege; and that, by presumption of law, its motives in doing so must be deemed proper and not actuated. by malice.   The trial judge denied this claim altogether.   In doing so he put the case upon precisely the same footing with publications which involve merely private gossip and scandal. The truth was allowed to be a defense, if made out, and so it would have been if the injurious charge which was published had been one in which the public was not concerned.

If there is no difference in moral quality between the publication of mere personal abuse and the discussion of matters of grave public concern, then this judgment may be right and should be affirmed.   But it is very certain, I think, that no declaration of this or any other court can convince the common reason that the distinction is not plain and palpable.   Few wrongs can be greater than the public detraction which has only abuse, or the profit from abuse, for its object. Few duties can be plainer than to challenge public attention to the official disregard of the principles which protect public and personal liberty.   I know of nothing more likely to encourage the license of a dissolute press than to establish the principle that the discussion of matters of general concern involving public wrongs and the publication of personal scandal come under the same condemnation in the law; for this inevitably brings the law itself into contempt and creates public sentiment against its enforcement.   If a law

is to be efficiently enforced the approval of the people must attend its penalties, and there must be some presumption at least that an act which it punishes involves some elements of wrong-doing. If *prima facie* the punishment is as likely to be inflicted for a right act as for a wrong act, the violation of law will not only be without disgrace, but the reckless libeler, when ranked by the law in the same company with respectable and public-spirited journalists, will shield himself to some extent behind their commendable public spirit and will find some protection for his license in the public opinion which condemns the law which it cannot respect.

The judgment, I think, should be set aside and a new trial ordered.

GRAVES, C. J. and MARSTON, J. concurred.

CAMPBELL, J., dissenting. The libel in this case was to the effect that plaintiff, as police justice, without evidence or complaint, and without any cause committed a Chinaman on a charge of an infamous felony and required heavy bail, and that his act was inexcusable. It was further criticised severely as an act of oppression, and he was more indirectly charged with failing to enforce the law on real criminals while he turned upon the helpless Chinaman who had no influence, and was the subject of popular prejudice.

The plea was one of justification with the general issue.

The court below confined the attention of the jury to the specific charge concerning the treatment of the Chinaman, disregarding the more general charges, and held the defense would be made out by showing the substantial truth of the facts stated, and that if these were substantially true the criticisms and inferences would also be fully justified. They were also directed to confine damages to actual damages in case they were satisfied the publication was made in good faith on reasonable grounds of belief. As the damages were found at $250 there is no reason to suppose they transgressed this ruling, and they must have found the facts not substantially true.

The only question strongly contested was, whether the publication of libelous facts not substantially true, but made in good faith, is so absolutely privileged as to exempt from civil liability to the party libeled? The question of criminal responsibility does not arise. No authority appears, and it is difficult, in my judgment, to conceive how any rule can be justified which would allow an account of legal proceedings not substantially accurate to be published to any one's prejudice without some responsibility. No one doubts, and the court below does not dispute, the amplest right to draw inferences from facts, but when the facts themselves are wanting there can be no complete justification. The line is clearly drawn between false assertions and false deductions. Character is as sacred as property, and every one is entitled to its protection under the law as a fundamental legal right. Such has been, as I conceive, the unquestioned doctrine at all times, and it is the only doctrine under which the reputation of citizens can be preserved from assaults. Good faith diminishes the injury, and in many cases may reduce the damages to a minimum, but it is impossible to hold that it entirely destroys the damages, and in civil cases such is not the accepted law.

As we cannot on this record say that there was not evidence for the jury to pass on, I think the verdict should be sustained. The question was one of fact.