McCRACKEN v. EVENING NEWS ASSOCIATION.

1. LIBEL AND SLANDER—NEWSPAPER ARTICLE—CRIMINAL PROCEEDINGS —STATUTORY PRIVILEGE.

Newspaper article which is a fair and true report and is based upon official records in criminal proceedings is given a qualified privilege by statute in suit for libel (CLS 1961, § 600.2911[3]).

2. SAME—NEWSPAPER ARTICLE—CRIMINAL PROCEEDINGS—STATUTORY PRIVILEGE.

Newspaper article derived from information obtained by reporter from assistant prosecutor at time complaint was made and warrant was issued charging plaintiff with fraud and later printed by defendant's newspaper is entitled to statutory qualified privilege as a matter of law in suit for libel (CLS 1961, § 600.2911[3]).

3. SAME—NEWSPAPER ARTICLE—CRIMINAL PROCEEDINGS—SOURCE OF INFORMATION—OFFICIAL RECORDS—STATUTORY PRIVILEGE.

Statutory qualified privilege protects newspaper publishers if an article is a fair and true report of the public and official proceedings, even though the reporter gathered his information from informal statements of assistant prosecutor rather than from the public and official proceedings (CLS 1961, § 600.2911 [3]).

4. SAME—NEWSPAPER ARTICLE—CRIMINAL PROCEEDINGS—SOURCE OF INFORMATION—STATUTORY PRIVILEGE.

The statute granting a newspaper a qualified privilege does not command the reporter to obtain his information from official court records, and, at his risk, and at the risk of his publisher, he may rely upon the word of another as to the contents of the complaint and warrant, and that it will be so issued if it has not already been (CLS 1961, § 600.2911[3]).

REFERENCES FOR POINTS IN HEADNOTES

[1–10] 33 Am Jur, Libel and Slander § 167; 39 Am Jur, Newspapers and Press Associations § 31.

Libel and slander: statement or publication that plaintiff has been indicted or is under indictment. 52 ALR2d 1178.

Pleading or raising defense of privilege in defamation action. 51 ALR2d 552.

5. Same—Abuse of Qualified Privilege—Newspaper Article.

Whether newspaper publisher has abused his qualified privilege is a question of fact for the trier of fact to determine, where he publishes an article derived from information obtained from sources other than official records and, when published, it does not substantially represent matter contained in such records (CLS 1961, § 600.2911[3]).

6. Same—Newspapers—Qualified Privilege—Statutes.

Statute according newspaper publishers a qualified privilege as to fair and true reports of official proceedings does not apply to report containing a statement that a warrant was issued for plaintiff's arrest, where no warrant had been issued, since there would then be no official proceedings to be reported (CLS 1961, § 600.2911[3]).

7. Same—Defense of Truth—Mitigation of Damages—Variance of Fact.

Facts as they exist may be shown in mitigation of damages, and if such facts are substantially the same, or not materially variant from those alleged, they will reduce the damages to a minimum, where a full and complete justification cannot be made of each item which goes to make up the libelous article.

8. Same—Defense of Truth—Variance of Fact.

A slight inaccuracy in one of the details will not prevent a judgment for the defendant in an action for libel, if the defendant can prove the facts complained of to be substantially true, providing the inaccuracy does not alter the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce.

9. Same—Qualified Privilege—Defense of Truth—Variance.

Defense of truth would be made out as to whole of newspaper article, the subject of action for libel, where jury is to determine whether defendant publisher has abused his qualified privilege and also find that the facts were not materially variant, or would not produce a different effect than the literal truth.

10. Same—Proof of Damages Due to Variance.

Newspaper report by defendant that plaintiff was charged with a $100,000 fraud when the warrant specified a fraud amounting to approximately $50,000 is an inaccuracy that does not alter the complexion of the affair and would have no different effect on the reader than that which the literal truth would produce,

hence plaintiff would not be entitled to recover any damages, where he offered no proof tending to show that the *variance* in the amount of the fraud as reported by defendant caused him any damage.

Appeal from Wayne; Holbrook (Donald E.), J., presiding. Submitted Division 1 December 7, 1965, at Detroit. (Docket No. 112.) Decided April 26, 1966.

Declaration by William M. McCracken against Evening News Association, a Michigan corporation, for damages resulting from an alleged libelous news article printed in defendant's newspaper. Judgment for plaintiff. Defendant appeals. Reversed and remanded for entry of judgment for defendant.

*David S. DeWitt,* for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy (George E. Brand, Jr., Rockwell T. Gust,* and *Joseph Pawl,* of counsel), for defendant.

J. H. Gillis, J. In September, 1960, plaintiff was president of the United Heat Engineering Co. which was engaged generally in commercial heating, ventilating, and air-conditioning work. At this time, plaintiff's corporation was doing work for a general contracting firm, J. A. Fredman, Inc., which firm was building an addition to the veterans administration hospital in Allen Park, Michigan.

Around September 12, 1960, Raymond Westrick, the secretary-treasurer of the J. A. Fredman, Inc., had 2 or 3 conversations with Anthony Renne, an assistant prosecuting attorney for Oakland county, at the prosecutor's office. Mr. Westrick complained to the prosecutor that certain invoices from a supplier of plaintiff's corporation had been altered by

plaintiff before being forwarded to the general contractor, J. A. Fredman, Inc., for payment.

The total face amount of the invoices as altered was $37,324.12. Mr. Westrick also showed the assistant prosecutor a certification as to stored materials which he contended plaintiff falsified in the amount of $39,797.77. On this basis, the assistant prosecutor, Mr. Renne, recommended a warrant against plaintiff.

On September 14, 1960, Westrick signed a complaint as to two of the items involved and a two-count warrant was issued against plaintiff by the municipal court for the city of Pontiac. Specified in count 1 was the felonious uttering and publishing of an invoice allegedly altered from $7,384.85 to $17,-384.85.[1]

Specified in count 2 was the felonious execution and delivery of the certificate that $39,797.77 of building materials were in plaintiff's possession, whereas plaintiff knew they were not.[2] According to the subsequent testimony of Mr. Renne at trial, selection of only two of the items complained of was in accordance with the policy of the prosecutor's office.

Mr. Renne, also in accordance with the policy of the prosecutor's office, informed defendant's reporter of the complaints made by Westrick, the issuance of the complaint and warrant, and that the fraud involved approximately $100,000 based on his estimate of Westrick's complaints.

On September 15, 1960, the defendant, owner and publisher of the Detroit News, a daily newspaper of general circulation in the Detroit metropolitan area, published the following item:

[1] CL 1948, § 750.249 (Stat Ann 1962 Rev § 28.446).
[2] CL 1948, § 750.278 (Stat Ann 1962 Rev § 28.489).

24-C—THE DETROIT NEWS—Thursday, September 15, 1960

# $100,000 Fraud Charged to Head of Heating Firm

PONTIAC, Sept. 15. — The president of a Detroit heating firm today was accused of defrauding a Pontiac contractor of an estimated $100,000 in work on a $2 million addition to the Veterans Administration Hospital at Dearborn.

Charged in a warrant signed yesterday by Pontiac Municipal Judge Cecil McCallum is William McCracken, owner of the United Heat Engineering Co., 17129 Rockdale.

## CHARGES BILL CHANGED

Anthony Renney, assistant Oakland County prosecutor, said Raymond T. Westrick, secretary-treasurer of J. A. Fredman Inc., a general contracting firm, is the complainant.

Westrick, Renney said, accused McCracken of increasing a supplier's invoice from $7,384 to $17,384 before submitting it to the Fredman firm.

McCracken, Renney said, also is accused of overvaluing the cost of materials in a sworn warehouse receipt.

## JOB UNFINISHED.

Westrick, Renney said, contends McCracken has completed only about $350,000 of a $500,000 contract when he stopped work. Westrick says it now will cost an estimated $600,000 to finish this part of the contract.

According to Renney, the increased invoice was submitted by McCracken to the Fredman firm, which forwarded it to the federal government. The government then paid Fredman, who sent the payment to McCracken.

In addition to the specific charges on the warrant, said Renney, McCracken is accused of altering a total of eight invoices.

On November 16, 1960, following examination, the judge of the municipal court for the city of Pontiac held that no probable cause existed for holding plaintiff for trial and thereupon discharged plaintiff and canceled his bond.

On September 14, 1961, plaintiff, in the circuit court for Wayne county, brought the instant suit for libel, alleging that the published report "meant that

plaintiff had been accused by law enforcing agencies of a crime involving a $100,000 fraud" and that "said words were and are wholly false." Defendant's answer asserted that the contents of the article were matters of public interest and the publication thereof was privileged; that the contents of the article and the gist thereof were true; and that the article was published with honest purpose and after reasonable care.

Trial commenced November 18, 1963, before the court without a jury. Plaintiff testified that United Heat Engineering Co. had ceased doing business the day after the publication complained of appeared in defendant's newspaper. He further testified that he owned 40% of the stock of the corporation and received a salary of $200 per week as its president. He testified he was thereafter unable to get employment in the Detroit area because of this adverse publicity but that he finally got a job in Cleveland on March 20, 1961.

In an opinion dated February 21, 1964, the court held that, by virtue of CLS 1961, § 600.2911(3) (Stat Ann 1962 Rev § 27A.2911[3]), the defendant enjoyed a qualified privilege to publish a "fair and true report of any public and official proceeding or any headnote of the article published," but that "this privilege shall not apply to any libel contained in any matter added by any person, or in the report of anything said, or done which was not a part of the official proceedings."

With this in mind, the court further found that the complaint and warrant involved could not extend to an amount more than $37,000 to $39,000; that "the headline read in connection with the first two paragraphs of the article would indicate to this court that the plaintiff was so charged with a $100,000 fraud, in the warrant mentioned in the article;" that

this was not a fair comment on the official proceedings and is forbidden by the statute; and that "it would have been just as easy to have reported it correctly." The court also found that there was no malice on the part of the defendant.

On this basis, the court granted judgment for the plaintiff and awarded damages in the amount of $6,000.

From this judgment defendant appeals, contending, among other things, that the "defendant newspaper was within the privilege accorded the publication of a fair and true report of any public and official proceeding where in good faith it reported that plaintiff was charged with an estimated $100,-000 fraud and where in fact plaintiff was officially charged with fraud involving at least $39,000."

Plaintiff argues that the information gathered by defendant's reporter, and thereafter published by defendant, was obtained from informal statements made by the assistant prosecutor, Mr. Renne, prior to the issuance of the warrant. Plaintiff further points out that Mr. Renne was not connected with the prosecution of the case. The record supports plaintiff in this regard. From this, plaintiff contends that since the reporter's information was not gathered from a public and official proceeding, it does not fall within the scope of the statutory qualified privilege.

With this we cannot agree. The statute protects newspaper publishers if the article is a fair and true report of the public and official proceeding. The fact that the reporter herein relied on the word of another as to the nature of the complaint and warrant is immaterial. The statute does not command the reporter to obtain his information from the official court records. At his risk, and at the risk of his publisher, he may rely upon the word of another as to the contents of the complaint and warrant, and

that it will be so issued if it has not already been. If the information thus obtained and published does not substantially represent the matter contained in the court records, then the question arises as to whether or not the publisher has abused his privilege. The abuse of the privilege is a question of fact for the trier of fact to determine. Obviously, if a warrant is never issued, there are no official proceedings that can be reported and this statute is not applicable.

Justice Talbot Smith in *Lawrence v. Fox* (1959), 357 Mich 134 (a case not involving the specific statutory privilege herein afforded publishers over the report of public and official proceedings, but dealing with the common-law privilege afforded publishers in other instances of alleged libel), stated at page 146:

"A newspaper was commenting upon the performance of duty by a public official. In such circumstances the law does not leave it to a jury to say whether or not the occasion is one of qualified privilege. This question, as we have seen, and for the reasons we have seen, is one of law for the court. Here, as defendants correctly asserted, the circumstances were such as to invest the defendants with a qualified privilege and the jury should have been so informed. It then remains for the jury, under proper instructions, to pass upon the maintenance or the destruction of the privilege."

The trial court in the instant case properly held that the defendant had a qualified privilege as a matter of law, but then found that the privilege had been abused by the incorrect reporting. In that portion of its opinion awarding damages to plaintiff, the court stated:

"The plaintiff is entitled to actual damages to his reputation and feelings which the law presumes will

flow from · the commission of the act and loss of wages, if any, occasioned by the loss of jobs. The court believes that the plaintiff is entitled to an award of $6,000."

In *McAllister* v. *Detroit Free Press Company* (1891), 85 Mich 453, at page 461, the Court stated:

"It is also settled law in this State that, where a full and complete justification cannot be made of each item which goes to make up the libelous article, the facts as they exist may be shown in mitigation of damages, and if such facts are substantially the same, or not materially variant from those alleged, they will reduce the damages to a minimum. *Sullings* v. *Shakespeare*, 46 Mich 413. It is laid down in Odgers on the Law of Libel and Slander, at page 170, that, if the substantial imputations be proved true, a slight inaccuracy in one of its details will not prevent the defendant's succeeding, providing the inaccuracy in no way alters the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce. * * * And if the jury should find that they were not materially variant, or would not produce a different effect than the literal truth, then the plea of justification would have been made out to the whole article."

In the instant case, this Court holds that the report by the defendant that plaintiff was charged with a $100,000 fraud when the warrant specified a fraud amounting to approximately $50,000 is an inaccuracy that does not alter the complexion of the affair and would have no different effect on the reader than that which the literal truth would produce. The statutory privilege afforded the defendant was not abused. Furthermore, the plaintiff offered no proof tending to show that the *variance* in the amount of the fraud as reported by defendant caused him any damage.

The judgment of the circuit court is reversed and the case remanded for entry of an order of judgment for defendant. Costs to appellant.

Watts, P. J., and Burns, J., concurred.