ROUCH v ENQUIRER & NEWS OF BATTLE CREEK, MICHIGAN

Docket No. 66177. Submitted June 7, 1983, at Grand Rapids.—Decided September 4, 1984. Leave to appeal applied for.

Plaintiff, David J. Rouch, was arrested in connection with an episode of criminal sexual conduct. The arrest and the details of the crime were reported by defendant newspaper, the Enquirer & News of Battle Creek, Michigan. Plaintiff was not charged with the crime and was released, and some months later someone else was charged with the crime. Plaintiff brought an action against defendant seeking damages for libel. The Calhoun Circuit Court, Stanley E. Everett, J., held that, while a media defendant such as a newspaper does not have a qualified privilege to report newsworthy accounts concerning private figures, there is a qualified privilege to report on matters of general public interest. The court held that the report of the arrest was of general public interest and that, therefore, the plaintiff was required to prove actual malice in order to overcome the qualified privilege. Summary judgment was granted in favor of defendant. Plaintiff appealed, alleging that there is no qualified privilege under the circumstances herein and that he is required only to prove negligence. *Held:*

1. There is no federal constitutional privilege to report on matters of public interest.

2. The statutory privilege for reporting of official judicial

REFERENCES FOR POINTS IN HEADNOTES

[1] 16A Am Jur 2d, Constitutional Law §§ 505, 511.

50 Am Jur 2d, Libel and Slander §§ 1, 198, 333.

58 Am Jur 2d, Newspapers, Periodicals, and Press Associations § 25.

Defamation: publication of "letter to editor" in newspaper as actionable. 99 ALR3d 573.

Actionability of false newspaper report that plaintiff has been arrested. 93 ALR3d 625.

Libel and slander: statement or publication that plaintiff has been indicted or is under indictment. 52 ALR2d 1178.

[2] 50 Am Jur 2d, Libel and Slander § 200.

[3, 5, 7] 50 Am Jur 2d, Libel and Slander §§ 195, 197.

[4, 6] 50 Am Jur 2d, Libel and Slander § 252.

proceedings does not apply because, since no warrant was ever issued, there were no official proceedings to which the privilege would apply.

3. Media defendants enjoy a qualified privilege to report on matters which advance an important societal or public interest, but not a privilege to report on every matter which may be of interest to the public. In this case the details of the plaintiff's alleged crime were merely matters that the public would find generally interesting. The report was not qualifiedly privileged. Therefore, the plaintiff need not prove actual malice, *i.e.,* knowledge that the statements were false or reckless disregard of whether they were false, in order to recover. He must only show that defendant was negligent in publishing the account.

Reversed and remanded.

1. LIBEL AND SLANDER — CONSTITUTIONAL LAW — PRIVILEGE.

There is no federal constitutional privilege to report on matters *of public interest; it is for the states to define the scope of their* defamation laws where private-figure plaintiffs are involved, subject only to the constitutional limitations that (1) liability may not be imposed against media defendants without fault and (2) punitive damages may not be imposed against media defendants unless actual malice, *i.e.,* knowledge that a statement was false or reckless disregard of whether it was false, is shown.

2. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — NEWSPAPERS.

Whether or not a newspaper has a qualified privilege to publish a news story is a question of law.

3. LIBEL AND SLANDER — QUALIFIED PRIVILEGE.

Publication of a qualifiedly privileged news story is not actionable for libel if the publisher honestly believed the story to be true and published it in good faith.

4. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — NEWSPAPERS — JUDICIAL PROCEEDINGS.

The statutory qualified privilege of a newspaper to publish reports of judicial proceedings does not apply to the report of a crime where no warrant was issued, and thus there were no official proceedings; a newspaper may report that a particular person has been arrested for a particular crime but as long as the matter has not advanced beyond the arrest the privilege does not cover reporting the particular details of the alleged crime (MCL 600.2911[3]; MSA 27A.2911[3]).

5. LIBEL AND SLANDER — MEDIA DEFENDANTS — QUALIFIED PRIVILEGE.

Media defendants, such as newspapers, enjoy a qualified privilege to report on matters which advance an important societal or public interest, but no qualified privilege to report on every matter which may be of interest to the public; the privilege extends only so far as the need for it applies.

6. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — NEWSPAPERS.

Newspaper accounts of accusations given to police officers regarding criminal activities are not protected by even a qualified privilege.

7. LIBEL AND SLANDER — MEDIA DEFENDANTS — ACTUAL MALICE — NEGLIGENCE.

A private-figure plaintiff in an action for libel against a media defendant, such as a newspaper, need not show actual malice, *i.e.,* knowledge that the allegedly defamatory statement was false or reckless disregard of whether it was false, in order to prevail where the publication is not protected by a qualified privilege; in such circumstances the plaintiff need only prove negligence.

*John M. Jereck,* for plaintiff.

*Sullivan, Hamilton, Ryan & Schultz* (by *James M. Sullivan),* for defendants.

Before: R. M. MAHER, P.J., and GRIBBS and K. N. SANBORN,* JJ.

K. N. SANBORN, J. On June 14, 1982, the trial court granted summary judgment for defendant on the basis that plaintiff could not prove that defendant acted with actual malice in the publication of a defamatory news item. Plaintiff appeals as of right.

On December 22, 1979, defendant printed the following story under the headline, "Police arrest suspect in baby-sitter assault":

* Circuit judge, sitting on the Court of Appeals by assignment.

"A 43-year-old man has been arrested and charged with with the sexual assault of a 17-year-old women *[sic]* who was baby-sitting with his children at his ex-wife's house on North Finlay Avenue in Bedford Township.

"The suspect has been identified by Bedford Township police as David J. Rouch [plaintiff in the present case] of 631 Golden Ave. He is free on a $10,000 personal recognizance interim bond pending his arraignment in District 10 Court next week. Rouch is charged with first-degree criminal sexual conduct.

"Police said Rouch allegedly entered the house about 4 a.m. Friday and attacked the young woman. He is said to have used a knife to cut the victim's clothes off, police said.

"The victim later called a relative, who took her to Community Hospital and then called police. The suspect was identified by his children, according to police.

"Rouch was arrested at his home by Emmett Township police, who were informed where he lived by Bedford Township investigators.

"The charge against Rouch was authorized Friday by the Calhoun County Prosecutor's Office."

Defendant received the information printed in this story from the Bedford Township Police Department.[1]

The parties agree that the underlying facts be-

---

[1] We note that defendant does not argue that it cannot be found liable (absent malice) simply because it was merely repeating what a police officer told its reporter. Defendant cannot escape liability merely because it repeated only what the police told it because a defendant is liable even if the libel is merely a repetition of what another person said. *Brewer v Chase,* 121 Mich 526; 80 NW 575 (1899); *Burt v McBain,* 29 Mich 260 (1874); 53 CJS, Libel and Slander, § 86, p 138. See, also, *Gilman v McClatchy,* 111 Cal 606, 612; 44 P 241, 242 (1896):

"If A. says B. is a thief, and C. publishes the statement that A. said B. was a thief, in a certain sense this would be the truth, but not in the sense that the law means. It would constitute no defense to C., for it would be but a repetition by him of a slanderous charge. His defense must consist in showing that in fact B. was a thief." (Under modern law, he could also defend by showing that he had not acted negligently.)

hind the story are substantially false: plaintiff did not commit the rape. Although plaintiff was arrested for the crime, he was never charged.[2] Instead, he was released after the Calhoun County Prosecutor's office refused to issue an arrest warrant. A few months later, somebody else was officially charged with the crime. Defendant printed a retraction on December 3, 1980—one day after plaintiff instituted this lawsuit.

Defendant asserted in the trial court, and now on appeal, that Michigan law extends to media defendants a qualified privilege to report newsworthy stories concerning private-figure plaintiffs and, as such, that plaintiff here was obligated to prove actual malice to prevail. The trial court rejected the notion that Michigan law embodies a qualified privilege for newsworthy accounts, but held that Michigan does recognize a qualified privilege to report on matters of general public interest. The trial court agreed with defendant that, because the report of an arrest was of general public interest, defendant was entitled to a qualified privilege and, because plaintiff could not prove actual malice, granted defendant's motion for summary judgment.

In this appeal, we must address whether the trial court correctly determined that defendant enjoyed a qualified privilege in reporting that

---

[2] By itself, this particular inaccuracy is not libelous. If the gist, the sting, of the article is substantially true, the defendant is not liable. *McCracken v Evening News Ass'n*, 3 Mich App 32; 141 NW2d 694 (1966); *Gomba v McLaughlin*, 180 Colo 232; 504 P2d 337 (1972). Whether or not the article is substantially true is a legal question. *Fendler v Phoenix Newspapers, Inc*, 130 Ariz 475; 636 P2d 1257 (Ariz App, 1981); *Anderson v Stanco Sports Library, Inc*, 542 F2d 638 (CA 4, 1976). In this limited context, the sting is the fact of the arrest. To most of the reading public, the additional fact of being formally charged by the prosecutor adds little. The fact that he did not commit the rape and that none of the underlying facts of the story are true, however, defeats the defense that the article was substantially true.

plaintiff had been arrested and charged with a sexual assault and the alleged circumstances of the assault, his identification, and his apprehension. Since defendant's brief implies that a qualified privilege to report such matters about a private-figure plaintiff is constitutionally required, we turn to a consideration of the constitutional limitations on a state's power to define its own defamation laws.

As recently as 1957, the United States Supreme Court flatly concluded "that libelous utterances are not within the area of constitutionally protected speech". *Roth v United States,* 354 US 476, 483; 77 S Ct 1304; 1 L Ed 2d 1498 (1957). However, in the next decade, the constitutional revolution in defamation law wrought profound changes to the common law of nearly every state. In *New York Times Co v Sullivan,* 376 US 254, 279-280; 84 S Ct 710; 11 L Ed 2d 686 (1964), the Supreme Court held that the First Amendment prohibits a public official from recovering damages for defamation unless he can prove that the defamatory statements were made with "actual malice", which was defined as knowledge that the statement was false or reckless disregard of whether it was false.[3]

The *New York Times* decision was subsequently extended by the United States Supreme Court in *Curtis Publishing Co v Butts,* 388 US 130; 87 S Ct 1975; 18 L Ed 2d 1094 (1967), to include "public figures" within the group of defamation plaintiffs who were required to prove "actual malice" as this term is used in *New York Times.* Thereafter, in

---

[3] Reckless disregard of the truth was later equated with "false statements made with the high degree of awareness of their probable falsity". *Garrison v Louisiana,* 379 US 64, 78; 85 S Ct 209; 13 L Ed 2d 125 (1964). See, also, *Curtis Publishing Co v Butts,* 388 US 130, 153; 87 S Ct 1975; 18 L Ed 2d 1094 (1967), and *St Amant v Thompson,* 390 US 727, 731; 88 S Ct 1323; 20 L Ed 2d 262 (1968).

the plurality opinion of Justice Brennan in *Rosenbloom v Metromedia, Inc,* 403 US 29; 91 S Ct 1811; 29 L Ed 2d 296 (1971), three members of the Court said that, if the communication involves matters of public or general concern, even a private-figure plaintiff is required to prove *New York Times* actual malice.

In *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974), however, the Court rejected the views of Justice Brennan as expressed in *Rosenbloom.* Instead, the Court left it to the states to define the scope of their defamation laws where private-figure plaintiffs are involved, subject to only two constitutional limitations:[4] (1) that liability may not be imposed against media defendants without fault and (2) that punitive damages may not be imposed against media defendants unless *New York Times* actual malice is proven.[5] Clearly, then, contrary to the apparent position of

---

[4] "[W]e conclude that the States should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual. * * *

"[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. This approach provides a more equitable boundary between the competing concerns involved here. It recognizes the strength of the legitimate state interest in compensating private individuals for wrongful injury to reputation, yet shields the press and broadcast media from the rigors of strict liability for defamation. * * *

"Our accomodation of the competing values at stake in defamation suits by private individuals allows the States to impose liability on the publisher or broadcaster of defamatory falsehood on a less demanding showing than that required by *New York Times.* This conclusion is not based on a belief that the considerations which prompted the adoption of the *New York Times* privilege for defamation of public officials and its extension to public figures are wholly inapplicable to the context of private individuals. Rather, we endorse this approach in recognition of the sgrong and legitimate state interest in compensating private individuals for injury to reputation." 418 US 323, 345-348; 94 S Ct 2997, 3010-3011; 41 L Ed 2d 789, 809-810.

[5] Here, plaintiff, not a public figure, is requesting neither.

defendant, there is no federal constitutional privilege to report on matters of public interest.[6]

Defendant next argues that, even if no federal constitutional privilege to report on matters of public interest exists, Michigan has nevertheless provided a common-law qualified privilege which would protect defendant from liability for negligence in printing its story. If a news story is qualifiedly privileged, the plaintiff must show malice to recover for libel. *Edwards v Chandler,* 14 Mich 471; 90 Am Dec 249 (1866); *Tumbarella v Kroger Co,* 85 Mich App 482; 271 NW2d 284 (1978), *lv den* 406 Mich 939 (1979). Whether or not a qualified privilege exists is a legal question.

---

[6] Following *Gertz,* a few courts have adopted a standard in accord with the *Rosenbloom* plurality and have required a private figure plaintiff to prove *New York Times* actual malice or something very close to it in order to prevail in actions against media defendants where the allegedly defamatory publication involves a matter of legitimate public concern or interest. See *Chapadeau v Utica Observer-Dispatch, Inc,* 38 NY2d 196; 341 NE2d 569 (1975) (gross irresponsibility); *Walker v Colorado Springs Sun, Inc,* 188 Colo 86; 538 P2d 450, *cert den* 423 US 1025; 96 S Ct 469; 46 L Ed 2d 399 (1975); *Aafco Heating & Air Conditioning Co v Northwest Publications, Inc,* 162 Ind App 671; 321 NE2d 580 (1974), *cert den* 424 US 913; 96 S Ct 1112; 47 L Ed 2d 318 (1976). The vast majority of the states to consider this issue, however, have adopted a negligence standard for determining if a defendant is liable to a private-figure plaintiff for a defamatory falsehood. See, *e.g., Peagler v Phoenix Newspapers, Inc,* 114 Ariz 309; 560 P2d 1216 (1977); *Phillips v Evening Star Newspaper,* 424 A2d 78 (DC App, 1980); *Cahill v Hawaiian Paradise Park Corp,* 56 Haw 522; 543 P2d 1356 (1975); *Troman v Wood,* 62 Ill 2d 184; 340 NE2d 292 (1975); *Gobin v Globe Publishing Co,* 216 Kan 223; 531 P2d 76 (1975); *McCall v Courier-Journal & Louisville Times Co,* 623 SW2d 882 (Ky, 1981), *cert den* 456 US 975; 102 S Ct 2239; 72 L Ed 2d 849 (1982); *Jacron Sales Co, Inc v Sindorf,* 276 Md 580; 350 A2d 688 (1976); *Stone v Essex County Newspapers, Inc,* 367 Mass 849; 330 NE2d 161 (1975); *Maloney & Sons, Inc v E W Scripps Co,* 43 Ohio App 2d 105; 334 NE2d 494 (1974), *cert den* 423 US 883; 96 S Ct 151; 46 L Ed 2d 111 (1975); *Martin v Griffin Television, Inc,* 549 P2d 85 (Okla, 1976); *Memphis Publishing Co v Nichols,* 569 SW2d 412 (Tenn, 1978); *Foster v Laredo Newspapers, Inc,* 541 SW2d 809 (Tex, 1976), *cert den* 429 US 1123; 97 S Ct 1160; 51 L Ed 2d 573 (1977); *Seegmiller v KSL, Inc,* 626 P2d 968 (Utah, 1981); *Taskett v King Broadcasting Co,* 86 Wash 2d 439; 546 P2d 81 (1976); *Denny v Mertz,* 106 Wis 2d 636; 318 NW2d 141 (1982), *cert den* 459 US 883; 103 S Ct 179; 74 L Ed 2d 147 (1982).

*Cochrane v Wittbold,* 359 Mich App 402, 407; 102 NW2d 459 (1960); *Tocco v Piersante,* 69 Mich App 616; 245 NW2d 356 (1976), *lv den* 399 Mich 882 (1977). Publication of a qualifiedly privileged story is not actionable if honestly believed to be true and published in good faith. *Lawrence v Fox,* 357 Mich 134, 142; 97 NW2d 719 (1959). This privilege is not limited to public individuals. *Peisner v Detroit Free Press, Inc,* 82 Mich App 153; 266 NW2d 693 (1978).

In this case, defendant argues that its story is protected by two separate qualified privileges. The first is the qualified privilege for accurately and fairly reporting judicial proceedings as provided by MCL 600.2911(3); MSA 27A.2911(3). The second is the privilege in Michigan to report matters in the public interest, as set forth in *Lawrence v Fox, supra.* We will address each argument in turn.

MCL 600.2911(3); MSA 27A.2911(3) states:

"No damages shall be awarded in any libel action brought against a reporter, editor, publisher, or proprietor of a newspaper for the publication in it of a fair and true report of any public and official proceeding, or for any heading of the report which is a fair and true headnote of the article published. This privilege shall not apply to a libel which is contained in any matter added by any person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding which was not a part of the public and official proceeding."

We do not agree with defendant that this privilege applies in the present case. Because "a warrant [was] never issued, there [were] no official proceedings that [could have been] reported and this statute is not applicable". *McCracken v Evening News Ass'n,* 3 Mich App 32, 39; 141 NW2d 694

(1966).[7] Although the privilege to accurately and fairly report judicial proceedings does permit a newspaper to report that a particular individual has been arrested for a particular crime, *Piracci v Hearst Corp,* 263 F Supp 511 (D Md, 1966), as long as the matter has not advanced beyond the arrest, the privilege does not cover reporting the particular details of the alleged crime. As stated in 3 Restatement Torts, 2d, § 611:

"The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported."

Comment *h* to this section provides:

"An arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege covered by this Section. On the other hand statements made by the police or by the complainant or other witnesses or by the prosecuting attorney as to the facts of the case or the evidence expected to be given are not yet part of

[7] In a similar vein, publishing a charge found in a bill of complaint is not privileged. *Park v Detroit Free Press Co,* 72 Mich 560; 40 NW 731 (1888); *Nixon v Warner Communications, Inc,* 435 US 589, 598; 98 S Ct 1306, 1312; 55 L Ed 2d 570, 580 (1978).

Likewise, the federal constitutional privilege to fairly and accurately report judicial proceedings has never been extended to cover proceedings before a warrant has even been sworn out. *Cox Broadcasting Corp v Cohn,* 420 US 469; 95 S Ct 1029; 43 L Ed 2d 328 (1975), and *Nebraska Press Ass'n v Stuart,* 427 US 539; 96 S Ct 2791; 49 L Ed 2d 683 (1976), both cited by defendant, are distinguishable. *Cox Broadcasting,* a right to privacy case rather than a defamation case, involved the newspaper's right to reveal a rape victim's name obtained from public documents. *Nebraska Press* involved a newspaper's right to cover a criminal trial.

the judicial proceeding or of the arrest itself and are not privileged under this Section."[8]

Therefore, if defendant is to be protected from its own negligence in its reporting of the details of the alleged offense, the protection must be provided by the second, common-law, privilege asserted by defendant—the qualified privilege to report matters in the public interest. Defendant claims that stories about crime are necessarily matters of public interest, and argues that the specific details of the alleged crime fit within this description and thus reporting of the details is qualifiedly privileged.

To a certain extent, criminal matters are within the public interest. In *Miner v Detroit Post & Tribune Co*, 49 Mich 358, 364; 13 NW 773 (1882), the Supreme Court held that the defendant had a privilege to bring to public light a judicial officer's order which jailed a person even though no charge had first been filed against him and no bail had been required to be set: "Few duties can be plainer than to challenge public attention to the official disregard of the principles which protect public and personal liberty." Likewise, in *Stice v Beacon Newspaper Corp, Inc*, 185 Kan 61; 340 P2d 396; 76 ALR2d 687 (1959), the Supreme Court of Kansas

---

[8] See, also, Prosser, Torts (4th ed), ch 21, § 118, pp 831-832.

"Thus it is the prevailing view, with some few courts to the contrary, that a pleading or a deposition filed in a case but not yet acted upon may not be reported under the claim of privilege. * * *

"The same is of course true of the preliminary statements of police, or any other evidence not yet given." (Footnotes omitted.)

And 1 Harper & James, The Law of Torts, § 5.24, p 433:

"[T]he publication of a petition, and answer, a deposition or an affidavit before a hearing has been held, does not receive the protection of a privilege. The same is true, as a general rule, of investigations and other activities of the police before a warrant is issued or any other official action taken."

held that a current news story involving a continuing violation of the law, like a police burglary ring, is also qualifiedly privileged.

Relying on *Schultz v Newsweek, Inc,* 668 F2d 911, 918 (CA 6, 1981), which construed Michigan law, defendant argues that the courts in Michigan require nonpublic-figure plaintiffs to prove that media defendants who have published defamatory news stories of general public interest acted with actual malice: "The privilege attaches to reports on matters of general public interest even though the plaintiff is a private individual." In our opinion, *Schultz* is distinguishable. The sole state court decision of any precedential value cited by the *Schultz* Court as support for the proposition that media defendants in Michigan enjoy a qualified privilege to report on matters of general public interest is *Peisner v Detroit Free Press, Inc, supra.* In *Peisner,* this Court quoted extensively from *Lawrence v Fox, supra,* as to the nature of the Michigan qualified privilege to report on matters in the public interest. There, the Supreme Court explicitly relied upon 3 Restatement Torts, § 619, comment *(a),* in holding that whether or not a qualified privilege exists is a question of law to be resolved under the rules set forth in §§ 585-599 of the Restatement. 357 Mich 134, 140-141. 3 Restatement Torts, 2d, § 598 provides:

"An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

"(a) there is information that affects a sufficiently important public interest, and

"(b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true."

Comment *(b)* to this section provides in pertinent part:

"The rule stated in this Section is applicable when any recognized interest of the public is in danger, including the interest in the prevention of crime and the apprehension of criminals, the interest in the honest discharge of their duties by public officers, and the interest in obtaining legislative relief from socially recognized evils."

As the Restatement implies, there is an important distinction between matters which truly promote the public interest and matters which are merely interesting to the public. Under the Restatement formulation, media defendants enjoy a qualified privilege to report on matters which advance an important societal or public interest,[9] not a qualified privilege to report on every matter which may be of interest to the public. See, also, *Timmis v Bennett,* 352 Mich 355, 368-369; 89 NW2d 748 (1958); *Postill v Booth Newspapers, Inc,* 118 Mich App 608, 619; 325 NW2d 511 (1982), *lv den* 417 Mich 1050 (1983); *Walker v Cahalan,* 97 Mich App 346, 356; 296 NW2d 18 (1980), *rev'd on other grounds* 411 Mich 857; 306 NW2d 99 (1981), *cert den* 454 US 1032; 102 S Ct 570; 70 L Ed 2d 476 (1981). A privilege extends only so far as the

---

[9] In *Gaynes v Allen,* 128 Mich App 42; 339 NW2d 678 (1983), the defendants had published a newsletter informing its members and the public about the quality of health care. One particular article accused the plaintiff of professional negligence. In ruling that the defendants were entitled to a qualified privilege to write their story, this Court stated:

"Ophthalmologists and the general public have a vital interest in the proper delivery of eye care services and in being informed of the level of competence of health care deliverers. *The issue* to which the allegedly defamatory article addressed itself *is one deserving of robust public debate.* We hold the published information was a matter of legitimate public concern and that defendants had a qualified privilege to publish it." 128 Mich App 48-49. (Emphasis supplied.)

reason for it applies. *Timmis, supra.* Hence, "[t]he public needs to know what goes on in court but does not need to know that A has slandered or libeled B outside of court". *Pittsburgh Courier Publishing Co, Inc v Lubore,* 91 US App DC 311; 200 F2d 355 (1952). See, also, *Clark v American Broadcasting Companies, Inc,* 684 F2d 1208 (CA 6, 1982), *cert den* 460 US 1040; 103 S Ct 1433; 75 L Ed 2d 792 (1983). In other words, a matter is not necessarily privileged merely because it in some way relates to the public interest. *Rancho La Costa, Inc v Superior Court of Los Angeles County,* 106 Cal App 3d 646, 666; 165 Cal Rptr 347, 360 (1980), *app dis* 450 US 902; 101 S Ct 1336; 67 L Ed 2d 326 (1981).

Both *Fox* and *Peisner* involved published reports concerning a threat to a recognized societal or public interest. In *Fox,* the media defendants had reported that plaintiff, a deputy superintendent of police in Detroit, had engaged in fraud, corruption, protection of criminals, perjury and deceit. Indeed, "[f]ew offenses known to the litany of prostitution of public trust were omitted". *Fox, supra,* p 135. Clearly, under the Restatement view, the defendants in *Fox* were entitled to claim a qualified privilege since the matters reported concerned the public interests in the prevention of crime, apprehension of criminals, and the honest discharge by high-ranking police officials of their duties. In *Peisner,* the newspaper defendant ran an article which accused the plaintiff of failing to raise the issue of judicial misconduct on appeal of an indigent defendant's criminal conviction because the plaintfif was the judge's longtime friend and former campaign manager. Thereafter, upon plaintiff's written request for a retraction, the defendant ran an editorial deploring the "buddy sys-

tem" of judicial appointments. Again, under the Restatement approach, the newspaper defendant enjoyed a qualified privilege to report on a matter which, if true, clearly threatened the recognized societal interest in ensuring equal justice of the law to all criminal defendants. 82 Mich App 153, 163. See, also, *Hayes v Booth Newspapers, Inc,* 97 Mich App 758, 774; 295 NW2d 858 (1980), and *Postill, supra,* p 619.

Contrary to defendant's assertion, *Schultz* did not rule that a story is qualifiedly privileged merely because it covers a subject found to be generally interesting. In *Schultz,* the defendant published a series of articles dealing with the disappearance of Jimmy Hoffa. Specifically, the news articles called the plaintiff an underworld figure who was a key figure in causing the disapperance of Jimmy Hoffa. The plaintiff conceded that the subject of Hoffa's disappearance was a matter of public interest as covered by the qualified privilege provided in Michigan. He then argued, however, that the defendant was not protected by this privilege as to him because he was merely an "incidental" or "peripheral" figure in the investigation and that the scope of the privilege was a jury question. The *Schultz* Court disagreed and found "no support for the * * * contention that the 'scope' of the privilege in cases involving matters of general public interest is a question of fact". 668 F2d 911, 918.

Clearly, stories about organized crime and the disappearance of Jimmy Hoffa deal with matters the discussion of which advances public concerns. After all, Hoffa was a major public figure and his disappearance led to an intense police investigation. On the other hand, the present case involves a nonpublic-figure plaintiff who had already been

"apprehended". Reporting to the public what he had allegedly done advanced no public concern.

Although information given to police officers regarding criminal activity is absolutely privileged, *Shinglemeyer v Wright,* 124 Mich 230; 82 NW 887 (1900), newspaper accounts of these accusations are not even qualifiedly privileged. *Jastrzembski v Marxhausen,* 120 Mich 677; 79 NW 935 (1899); *Cianci v New Times Publishing Co,* 639 F2d 54 (CA 2, 1980); *Fullerton v Berthiaume,* 6 Que CS 342, 343 (1894). Furthermore, in both *Sherwood v Evening News Ass'n,* 256 Mich 318; 239 NW 305 (1931),[10] and *Davis v Marxhausen,* 86 Mich 281; 49 NW 50 (1891), the Supreme Court held that the defendants were not privileged to report information received from the police that the plaintiffs had been involved in criminal activity. The defendants had incorrectly reported that the plaintiffs had been arrested.

One of the cases relied upon in *Lawrence v Fox, supra,* is *McAllister v Detroit Free Press Co,* 76 Mich 338; 43 NW 431 (1889), which has circumstances strikingly similar to those in the instant case. There, plaintiff had been arrested in Windsor, Ontario. Sometime earlier, a post office in Bothwell, Ontario, had been robbed. Although the plaintiff was in fact arrested (and later released) for violating a Canadian postage stamp law, the

---

[10] Defendant contends that *Sherwood* is a "classic expression of the doctrine of liability without fault" and, as such, is "no longer valid law". Assuming, *arguendo,* that defendant has correctly characterized *Sherwood* in this regard, the fact that *Gertz, supra,* no longer allows the states to impose liability on media defendants without fault hardly means that every holding in *Sherwood* is no longer valid. No Michigan Supreme Court precedents have subsequently held that media defendants enjoy a qualified privilege to report on matters uncovered from police gossip or in conversation with the police. Just as the discovery of one rotten apple in a bushel is no reason to throw out the bushel, one overruled proposition in a case is no reason to ignore all the other holdings appearing in that decision.

article, based on information from the police, tied plaintiff to the post office robbery. The Supreme Court held that no qualified privilege applied:

"It is argued that a newspaper in this day and age of the world, when people are hungry for the news, and almost every person is a newspaper reader, must be allowed some latitude and more privilege than is ordinarily given under the law of libel as it has heretofore been understood. In other words, because the world is thirsting for criminal items, and the libel in a newspaper is more far-reaching and wide-spread than it used to be when tales were only spread by the mouth, or through the medium of books or letters, there should be given greater immunity to gossip in the newspaper, although the harm to the person injured is infinitely greater than it would be if published otherwise.

"The greater the circulation the greater the wrong, and the more reason why greater care should be exercised in the publication of personal items. No newspaper has any right to trifle with the reputation of any citizen, or by carelessness or recklessness to injure his good name and fame or business. And the reporter of a newspaper has no more right to collect the stories on the street, *or even to gather information from policemen or magistrates out of court,* about a citizen, and to his detriment, and publish such stories and information as facts in a newspaper, than has a person not connected with a newspaper to whisper from ear to ear the gossip and scandal of the street. If true, such publication or such speaking may be privileged, but if false, the newspaper as well as the citizen must be responsible to any one who is wronged and damaged thereby.

"It is indignity enough for an honest man to be arrested and put in prison for an offense of which he is innocent, and for which indignity ofttimes he has no redress, without being further subjected to the wrong and outrage of a false publication of the circumstance of such arrest and imprisonment, looking towards his guilt, without remedy. And no sophistry of reasoning, and no excuse of the demand of the public for news, or of the peculiarity and magnitude of newspaper work,

can avail to alter the law, except, perhaps, by positive statute, which is doubtful, so as to leave a party thus injured without any recompense for a wrong which can even now, as the law stands, never be adequately compensated to one who loves his reputation better than money." 76 Mich 338, 355-356. (Emphasis supplied.)

Although no recent Michigan decision has addressed the issue of whether media defendants have a qualified privilege to report the details of a crime before the case has advanced to a judicial proceeding, recent decisions from other jurisdictions support the rule of *McAllister* and *Sherwood.* In *Phillips v Evening Star Newspaper Co,* 424 A2d 78 (DC App, 1980), the defendant reported that plaintiff had been arrested after shooting and killing his wife during a quarrel. The defendant had obtained this information from a "hot line" maintained by the public information office of the District of Columbia Police Department. Whenever an event occurred which the public information officer of the police department deemed newsworthy, he prepared a written report and transmitted orally the information over the "hot line phone". In fact, in *Phillips,* plaintiff had been arrested for homicide, but the killing was later reclassified as an accidental shooting. There was no proven basis for the "hot line" report that the shot had been fired "during an argument". The *Phillips* Court rejected the contention made by the defendant therein that the newspaper enjoyed a qualified privilege to report information gathered from the police "hot line".

In *Hornby v Hunter,* 385 SW2d 473 (Tex Civ App, 1964), a deputy sheriff had told the defendant reporter that a warrant had been issued for the arrest of plaintiff for stealing a car. In fact, no

warrant for stealing a car had ever been issued, although one had been issued against plaintiff for receiving and concealing stolen property. The Texas court held that, even though the publication had been made in good faith, the defendant was liable for actual damages. In so ruling, the court specifically mentioned the conflict between the two competing interests herein involved:

"[O]ne, the interest of an individual and his right to remain undamaged in his reputation in the community as a result of any libelous statements with reference to him, and the other the fundamental principle involved with the other competing interest, the right of a free press to carry on its business in an ordinary fashion in a businesslike way and to disseminate the news and to publish and circulate that news without fear or restraint so far as reporting accurately, fearlessly and completely." 385 SW2d 473, 477.

The Texas court resolved this particular conflict by ruling that "a false statement of fact, concerning an individual even if made as a result of a communication from a public official is not privileged as a fair comment upon matters of public concern". *Id.*

Likewise, in *Lancour v Herald & Globe Ass'n,* 111 Vt 371; 17 A2d 253; 132 ALR 486 (1941), the Supreme Court of Vermont struck the same balance. There, the newspaper article not only merely reprinted what the police officers had told the defendant, but it stated that these matters were "alleged by authorities". However, merely printing "it is alleged" did not absolve the defendant of liability: " 'An accusation purporting to rest on hearsay is none the less defamatory.' " 111 Vt 371, 380; 17 A2d 253, 257. After noting the conflict also mentioned in *Hornby, supra,* the *Lancour* court reached the same result:

"But, weighing the social values involved, it seems better to confide in the diligence and discretion of such officials, rather than that any person should be subjected to unmerited obloquy through the publication of false accusations made to them in the course of their investigations, the tendency of which is, in the words of Ellenborough, C.J., in *Rex v Fisher,* 2 Camp 563, 571, 'to prejudice those whom the law still presumes to be innocent and to poison the sources of justice.' " 111 Vt 371, 385-386; 17 A2d 253, 259.

See, also, *Williams v WCAU-TV,* 555 F Supp 198 (ED Pa, 1983); *Lambert v Providence Journal Co,* 508 F2d 656 (CA 1, 1975), *cert den* 423 US 828; 96 S Ct 45; 46 L Ed 2d 45 (1975); *O'Neal v Tribune Co,* 176 So 2d 535 (Fla App, 1965); *Christy v Stauffer Publications, Inc,* 437 SW2d 814 (Tex, 1969); *Commercial Publishing Co v Smith,* 149 F 704 (CA 6, 1907). *Contra Brown v Johnson Newspapers Corp,* 84 App Div 2d 636; 444 NYS2d 493 (1981); *Turnbull v Herald Co,* 459 SW2d 516 (Mo App, 1970); *Kilgore v Koen,* 133 Or 1; 288 P 192 (1930); *McClure v Review Publishing Co,* 38 Wash 160; 80 P 303 (1905).

We conclude that, in Michigan, where, as here, the media defendants' publication is not wrapped in a qualified privilege, a private-figure plaintiff need only prove negligence in order to prevail.

In the present case, the details of plaintiff's alleged crime were merely matters that the public would find generally interesting and not matters "deserving of robust public debate". The fact that plaintiff had been arrested for raping his ex-wife's teenage baby sitter and cutting off the baby sitter's clothes with a knife does not contribute to the public's interest in reducing or detecting crime. Instead, it merely maximizes the damage to plaintiff's reputation. Thus, considering the obvi-

ous harm to plaintiff's reputation, we conclude that the balance should be struck in plaintiff's favor.

This holding does not preclude a newspaper from ever printing the facts of an alleged crime by a nonpublic-figure plaintiff. A newspaper may avoid liability for negligence in printing such details by either reporting the fact of an individual's arrest, without mentioning the details of the crime (and thus be protected by the official proceedings privilege), see, *e.g.,* 3 Restatement Torts, 2d § 611, comment *h,* p 301, or by reporting the details of the alleged crime without naming the suspect until the matter has advanced to official proceedings (and so avoiding even the possibility that the article is libelous).

Unfortunately, in this case, defendant chose to print the details of the crime and specifically named plaintiff as the suspect. Naturally, this approach maximized the potential of harm to plaintiff's reputation. We believe that the individual's right to be compensated for such an injury outweighs the relatively slight impingement (as in this case) on a newspaper's right to report such matters: "The public interest does not require that the right to enjoy a good name shall be made subservient to the right of free speech." *Lancour, supra,* 11 Vt 371, 386; 17 A2d 253, 259.

Therefore, we hold that the trial judge erred by ruling that plaintiff must show that defendant possessed malice when it printed its article. Instead, plaintiff need only show that defendant was negligent in printing the defamatory matter in order for plaintiff to recover his actual damages. 3 Restatement Torts, 2d § 580B(c).

Reversed and remanded for proceedings consistent with this opinion. Plaintiff may tax costs.